# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

ANGELO ALBANO, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

MOLYCORP, INC.,
MARK A. SMITH and
JAMES S. ALLEN,

    Defendants.

## PLAINTIFF'S CLASS ACTION COMPLAINT FOR
## VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff has alleged the following based upon the investigation of counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Molycorp, Inc. ("Molycorp" or the "Company"), the Company's publicly available financial statements, securities analysts' reports and advisories about Molycorp, and press releases and other public statements made by the defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations herein after a reasonable opportunity to conduct discovery.

## NATURE OF THE ACTION

1. Plaintiff brings this action individually and on behalf of all persons who purchased or otherwise acquired the common stock of Molycorp on the New York Stock Exchange ("NYSE") between March 9, 2011 and November 10, 2011, inclusive (the "Class Period"). The action is brought against Molycorp, Mark A. Smith and James S. Allen for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act").

2. Defendants' Class Period false and misleading statements about the capability of the Company's "Mountain Pass" mining operation and the Company's earnings caused Molycorp common stock to trade at artificially inflated prices throughout the Class Period. During the Class Period, and immediately thereafter, investors learned that there would be less demand for rare earth elements and that the Company's third quarter 2011 financial results and fourth quarter 2011 production guidance would be less than investors had been led to expect. The price of the Company's common stock plummeted when the reasonably foreseeable consequences of defendants' Class Period fraud was disclosed. Unfortunately for unwitting investors, the capabilities of Mountain Pass have proven to be little more than hype.

## JURISDICTION AND VENUE

3. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78(a)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

4. This Court has jurisdiction over this action pursuant to §27 of the 1934 Act [15 U.S.C. §78aa] and 28 U.S.C. §§1331 and 1337.

5. Venue is proper in this District pursuant to §27 of the 1934 Act [15 U.S.C. §78aa] and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District.

6. In connection with the acts and conduct alleged in this Complaint, defendants, directly and indirectly, used the means of interstate commerce, including the mails and telephonic communications and the facilities of the NYSE, a national securities exchange.

## PARTIES

7. Plaintiff Angelo Albano purchased Molycorp common stock during the Class Period as set forth in the certification attached hereto and incorporated herein by reference and was damaged thereby.

8. Defendant Molycorp is a rare earth element mining company. Molycorp maintains its principle offices at 5619 Denver Tech Center Parkway, Greenwood Village, Colorado.

9. Defendant Mark A. Smith ("Smith") was, at all relevant times, Chief Executive Officer, President and a director of Molycorp.

10. Defendant James S. Allen ("Allen") was, at all relevant times, Chief Financial Officer of Molycorp.

11. Defendants Smith and Allen are collectively referred to herein as the "Individual Defendants."

12. Defendant Molycorp and the Individual Defendants are collectively referred to herein as "defendants."

13. The Individual Defendants, because of their senior-level executive and director positions with the Company, possessed the power and authority, and exercised that power and authority, to control the contents of Molycorp's quarterly and annual reports, offering documents, press releases, and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.

14. The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executives and/or directors, were "controlling persons" within the meaning of §20(a) of the 1934 Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein.

15. As senior executives and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the 1934 Act, and was, and is, traded on the NYSE and governed by federal securities laws, the Individual Defendants had a duty to promptly report accurate and truthful information regarding Molycorp's financial condition and performance, growth, operations, business, financial statements, products and markets and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Molycorp would based on

truthful and accurate information. The Individual Defendants' misrepresentations and omission during the Class Period violated these specific requirements and obligations.

## SUBSTANTIVE ALLEGATIONS

16. On March 9, 2011, Molycorp filed it 2010 Form 10-K with the SEC. Defendants Smith and Allen signed the 2010 Form 10-K. The 2010 Form 10-K stated:

**Our Mine Process and Development Plans**

We and SRK Consulting (U.S.), Inc., or SRK Consulting, estimated total proven reserves as of February 6, 2010 of 88.0 million pounds of REO contained in 0.480 million tons of ore, with an average ore grade of 9.38%, and probable reserves of 2.12 billion pounds of REO contained in 13.108 million tons of ore, with an average ore grade of 8.20%, in each case using a cut-off grade of 5.0%, at our Mountain Pass mine. Upon the completion of our initial modernization and expansion plan, which we expect to be completed by the end of 2012, we expect to have the ability to produce approximately 19,050 mt of REO per year at our Mountain Pass facility. Upon the completion of our recently approved capacity expansion plan, by the end of 2013, we expect to have the ability to produce approximately 40,000 mt of REO per year at our Mountain Pass facility, or approximately double the amount we will be able to produce upon completion of our initial plan. Based on our estimated reserves and an expected annual production rate of approximately 19,050 mt of REO under our initial modernization and expansion plan, our expected mine life is in excess of 30 years . . . .

17. On or about June 7, 2011, Molycorp filed with the SEC a Form S-1/A Registration Statement ("Registration Statement") for the secondary offering of 11.5 million shares (including the overallotment) of Molycorp stock. Both of the Individual Defendants signed the Registration Statement. In addition, several members of the Company's Board of Directors signed the Registration Statement.

18. The Registration Statement highlighted the Company's plans for the expansion of its Mountain Pass mine and the need to obtain funding to support the expansion:

### *Decision to Double Original Planned Production Capacity*

We recommenced mining operations in December 2010 and are preparing to recommence milling operations, which we expect to occur in the first quarter of 2012. As of December 2010, we have secured all permits necessary to allow construction to start on the initial modernization and expansion plan. We have also entered into a number of construction contracts associated with our initial modernization and expansion plan.

In light of strong industry fundamentals, including reduced Chinese supply and strong pricing increases, our Board of Directors recently approved a second-phase capacity expansion plan in addition to our initial modernization and expansion plan. Upon the completion of this capacity expansion plan, by the end of 2013, we expect to have the ability to produce up to approximately 40,000 mt of REO per year at our Mountain Pass facility, or approximately double the amount we will be able to produce upon completion of our initial plan. . . .

We will commence work on this second phase as we are working on our initial plan. In certain cases, we will not need to add additional equipment in connection with the second phase to provide additional capacity, including milling, but in other cases, including separations and power, we will need to install additional capacity. We do not believe we will need to obtain additional permits, other than air and building permits. We do not expect that work on the second phase will delay completion of our initial modernization and expansion plan, and we continue to expect completion of our initial plan pursuant to our current schedule, subject to obtaining full funding. We have estimated, based on consultation with our project manager, that we will incur approximately $250 million in additional capital costs in connection with the capital expansion plan beyond those budgeted for our initial plan. However, this estimate has not been independently reviewed, and actual costs could vary significantly. We will need to obtain additional funding for such plan.

19. The Registration Statement also touted the purported strengths of Molycorp and its Mountain Pass mining facility:

### *We have a proven source of REOs with high-grade ore and long reserve life*.

Prior to the end of the last mining campaign at the Mountain Pass facility in 2002, the mine had been in continuous operation for over 50 years. Since our acquisition of the Mountain Pass facility, we have been processing stockpiled feedstocks as part of our ongoing effort to significantly improve our solvent extraction technologies and other processing capabilities. Today, based on estimated total proven reserves of 88.0 million pounds of REO contained in 0.480 million tons of ore, with an average ore grade of 9.38%, and probable reserves of 2.12 billion

- 5 -

pounds of REO contained in 13.108 million tons of ore, with an average ore grade of 8.20%, in each case using a cut-off grade of 5.0%, the Mountain Pass mine has a life in excess of 30 years at an annual production rate of approximately 19,050 mt of REO.  Our leadership team is committed to the continuous and sustainable manufacture of rare earth products at the Mountain Pass facility using advanced milling and processing technologies that will significantly increase the life of the known ore body at the Mountain Pass facility.  Additionally, in 2010, we expanded our on-site exploratory drilling program to confirm the existence and extent of bastnasite, monazite and other rare earth phosphate mineral occurrences in unexplored areas of the Mountain Pass facility.

20. In connection and simultaneously with the June 7, 2011 secondary offering, numerous insiders reported the sale of $700 million in Molycorp stock, including defendant Smith.

21. On August 11, 2011, Molycorp filed its Form 10-Q with the SEC.  Defendants Smith and Allen signed the Form 10-Q.  The Form 10-Q stated:

*Our Mine Process and Development Plans*

We recommenced mining operations in December 2010 and are preparing to recommence milling operation, which we expect to occur in the first quarter of 2012. Recommencement of mining and milling operations is coincident with our initial modernization and expansion plan, which will give us the capacity to efficiently produce at a rate of approximately 19,050 mt of REO per year by the end of 2012. Additionally, upon the completion of our capacity expansion plan, we expect to have the ability to produce up to approximately 40,000 mt of REO per year by the end of 2013.  Prior to the expected completion of our initial modernization and expansion efforts at Mountain Pass, we expect to produce approximately 3,000 mt to 5,000 mt per year in the aggregate of cerium products, lanthanum concentrate, didymium oxide and heavy rare earth concentrates from stockpiled feedstock.

22. The statements referenced above at ¶¶16-19 and 21 were each materially false and misleading when made because defendants misrepresented and failed to disclose the following adverse facts:

(a) Molycorp's development and expansion of the Mountain Pass mine was not progressing on schedule and would not allow the Company to reach rare earth oxide production rates at the end of calendar 2012 and 2013;

- 6 -

(b) End users had been reducing demand for the Company's products as prices for rare earth elements increased; and

(c) The lack of progress in development and expansion of the Mountain Pass mine made it difficult, if not impossible, for the Company to produce and deliver certain magnet products to its key customers.

23. On September 20, 2011, a J.P. Morgan securities analyst cut the target price of Molycorp by half as there was less demand for the Company's rare earth elements. In response to J.P. Morgan's cut in the target price of Molycorp, the value of the Company's stock plummeted from a September 19, 2011 closing price of $53.01 per share to a low of $41.33 per share on September 20, 2011, representing a 22% decrease on heavy trading volume.

24. On November 10, 2011, the Company reported disappointing third quarter 2011 revenues and earnings results below analysts' estimates and announced a reduction in Mountain Pass production guidance for the fourth quarter of 2011 due to expected equipment downtime relating to Mountain Pass engineering and expansion issues. The Company's stock price plummeted again, dropping from $38.70 per share on November 10, 2011 to $33.45 per share on November 11, 2011, or 13.6%, on heavy trading volume.

## LOSS CAUSATION

25. During the Class Period, as detailed herein, defendants engaged in scheme to deceive the market and a course of conduct that artificially inflated the price of Molycorp common stock and operated as a fraud on Class Period purchasers of Molycorp common stock by failing to disclose and misrepresenting the adverse facts alleged herein. When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Molycorp

common stock fell precipitously as the prior inflation came out of the stock price. As a result of their purchases of Molycorp common stock during the Class Period, plaintiff and the other class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

26. As a direct result of the disclosures on September 20, 2011 and November 11, 2011, the price of Molycorp common stock plummeted, falling from its closing price of $53.01 per share on September 19, 2011 to close at $41.45 on September 20, 2011, representing a 22% decrease on heavy trading volume. On November 11, 2011, the price of Molycorp common stock plummeted again, falling from its closing price of $38.70 per share on November 10, 2011 to close of $33.45 per share on November 11, 2011, representing a 13.6% decrease.

27. The 22% and 13.6% declines in Molycorp's common stock were a direct result of the nature and extent of defendants' fraud being revealed to investors and the market. The timing and magnitude of the price decline in Molycorp common stock negates any inference that the loss suffered by plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and other members of the Class was a direct result of defendants' fraudulent scheme to artificially inflate the price of Molycorp common stock and the subsequent significant declines in the value of Molycorp common stock when defendants' prior misrepresentations were revealed.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

28. At all relevant times, the market for Molycorp common stock before, during and after the Class Period was an efficient market for the following reasons, among others:

(a) Molycorp securities were listed and or actively traded on an efficient and automated trading market, the NYSE;

(b) Molycorp filed periodic public reports with the SEC;

(c) Molycorp regularly communicated with investors in the U.S., through established market communications mechanisms, including through regular dissemination of press releases on U.S. national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other reporting services and via the Internet;

(d) Molycorp was followed by numerous major securities analyst and brokerage firms throughout the Class Period who regularly issued reports that were distributed to brokers, customers and investors. Each of these reports were publicly available and entered the public marketplace;

(e) Molycorp had a large, multi-billion dollar market capitalization throughout the Class Period; and

(f) On August 5, 2011, Molycorp filed a Form S-3ASR with the SEC, which may only be filed by well-known seasoned issuers.

29. As a result of the foregoing, the market for Molycorp common stock promptly digested current, public information regarding Molycorp from publicly available sources and reflected such information in the price of the Company's stock. Accordingly, all purchasers or acquirers of Molycorp common stock during the Class Period suffered similar injury through their purchase or acquisition of Molycorp common stock at artificially inflated prices.

## NO SAFE HARBOR

30.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Molycorp who knew that those statements were false when made.

31.     Defendants failed to provide any meaningful discussion of the risks that, throughout the Class Period, were materially and adversely impacting the Company's operations.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired Molycorp common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Molycorp has millions of securities trading in the United States, owned by hundreds, if not thousands, of institutional and retail investors. Record owners and other members of the Class may be determined by Molycorp, its transfer agent and depository institutions and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether the 1934 Act was violated by defendants;

(b) Whether defendants omitted and/or misrepresented material facts;

(c) Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether defendants knew or deliberately disregarded that their statements were false and misleading; and

(e) The extent of damage sustained by Class members and the appropriate measure of damages.

35. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

36. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

37. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for members of the Class to individually redress wrongs perpetrated by the defendants. There will be no difficulty in the management of this case as a class action.

## COUNT I

### For Violations of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39. During the Class Period, defendants disseminated or approved the materially misleading statements specified above, which they knew or deliberately disregard were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under with they were made, not misleading.

40. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made misleading statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon purchasers of the Company's common stock during the Class Period.

41. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Molycorp common stock. Plaintiff and the Class would not have purchased Molycorp common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

42. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Molycorp common stock during the Class Period.

## COUNT II

### For Violations of §20(a) of the 1934 Act
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Molycorp within the meaning of §20(a) of the 1934 Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and awareness of the Company's operations and intimate knowledge of the statements disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Company controlled the Individual Defendants and all of its employees.

46. As set forth above, Molycorp and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, defendants are liable pursuant to §20(a) of the 1934 Act. As a direct and proximate result of these defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, individually and on behalf of the Class, prays for judgment as follows:

A. Declaring this action to be a class action properly maintained pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

B. Awarding plaintiff and other members of the Class damages together with interest thereon;

C. Awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, expert fees and other costs and disbursements; and

D.     Awarding plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all issues triable by a jury.

DATED:  February 3, 2012                          DYER & BERENS LLP
                                                  ROBERT J. DYER III
                                                  JEFFREY A. BERENS


                                                         /s/ JEFFREY A. BERENS
                                                        JEFFREY A. BERENS

                                                  303 East 17th Avenue, Suite 300
                                                  Denver, CO  80203
                                                  Telephone:  303/861-1764
                                                  303/395-0393 (fax)
                                                  bob@dyerberens.com
                                                  jeff@dyerberens.com

                                                  ROBBINS GELLER RUDMAN
                                                     & DOWD LLP
                                                  DARREN J. ROBBINS
                                                  DAVID C. WALTON
                                                  TRIG R. SMITH
                                                  655 West Broadway, Suite 1900
                                                  San Diego, CA  92101
                                                  Telephone:  619/231-1058
                                                  619/231-7423 (fax)

                                                  LAW OFFICES BERNARD M.
                                                     GROSS, P.C.
                                                  DEBORAH R. GROSS
                                                  Wanamaker Bldg., Suite 450
                                                  100 Penn Square East
                                                  Philadelphia, PA  19107
                                                  Telephone:  215/561-3600
                                                  215/561-3000 (fax)

- 16 -

                    LAW OFFICES OF KENNETH A. ELAN
                    KENNETH A. ELAN
                    217 Broadway, Suite 606
                    New York, NY 10007
                    Telephone: 212/619-0261
                    212/385-2707 (fax)

                    Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Molycorp.doc

LAW OFFICES BERNARD M. GROSS, P.C.

## CERTIFICATION OF

1. I, Angelo Albano, have reviewed the Complaint and have authorized the filing of same;

2. I did not purchase the common stock of MOLYCORP at the direction of plaintiff's counsel or in order to participate in any private action arising under this title of the federal securities laws;

3. I am willing to serve as class representative and provide testimony at deposition and trial if necessary;

4. During the period, March 9, 2011 through November 10, 2011, my transactions in the common stock of MOLYCORP consisted of the following:

| Date | Purchase(s) or Sales(s) | Amount | Price |
|---|---|---|---|
| See exhibit A | | | |

5. During the previous three years, I have not been or moved to be a lead plaintiff in any securities fraud class action.

6. I will not accept any payment for serving as a class representative beyond my pro rata share of any recovery, except as ordered or approved by the Court with respect to an award for reasonable costs and expenses (including lost wages).

I declare under penalty of perjury that the foregoing is true and correct. Executed this FE 2 day of 2, 2012, at MERRICK, NY .(city/state)

Angelo Albano

# EXHIBIT A

| Date | Purchase(s) or Sales(s) | Amount | Price |
|---|---|---|---|
| 8/8/11 | Purchase | 500 shares | $47.59/share |
| 10/18/11 | Purchase | 500 shares | $38.44/share |
| | | | |
| | | | |