**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-00292-WJM

ANGELO ALBANO, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

MOLYCORP, INC., MARK A. SMITH and JAMES S. ALLEN,

        Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT OF THE ALLEN GROUP'S MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**
_____

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 4

II.     THE ALLEN GROUP SHOULD BE APPOINTED LEAD PLAINTIFF FOR
        THE CLASS ................................................................................................................ 4

        A.    The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff .......... 4

        B.    Under The PSLRA, The Allen Group Should Be Appointed Lead Plaintiff ............. 6

               1.    The Allen Group Filed a Timely Motion ...................................................... 6

               2.    The Allen Group Has the Largest Financial Interest in the Relief
                      Sought By the Class ...................................................................................... 7

               3.    The Allen Group Meets Rule 23's Typicality and Adequacy
                      Requirements ................................................................................................ 8

III.    THE COURT SHOULD APPROVE THE ALLEN GROUP'S SELECTION OF
        THE FARUQI FIRM AS LEAD COUNSEL ........................................................... 10

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................................7

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996) ........................................................................................6

*In re Crocs, Inc. Sec. Litig.*,
No. 07-cv-02351-REB-KLM, 2008 U.S. Dist. LEXIS 87524
(D. Colo. Sept. 17, 2008) ............................................................................................ *passim*

*In re Diamond Foods, Inc. Sec. Litig.*,
No. C-11-05386 WHA, 2012 U.S. Dist. LEXIS 38497 (N.D. Cal. Mar. 20, 2012) ..................7

*In re Gentiva Secs. Litig.*,
No. 10-cv-5064 (ADS)(WDW), 2012 U.S. Dist. LEXIS 9177
(E.D.N.Y. Jan. 26, 2012) ...................................................................................................10

*In re Level 3 Communs., Inc. Secs. Litig.*,
No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4, 2009) .............5

*In re Nice Sys., Ltd. Sec. Litig.*,
188 F.R.D. 206 (D.N.J. 1999)..............................................................................................6

*In re Ribozyme Pharms., Inc. Sec. Litig.*,
192 F.R.D. 656 (D. Colo. 2000) ..................................................................................7, 9, 10

*Mishkin v. Zynex, Inc.*,
No. 09-cv-00780-REB-KLM, 2010 U.S. Dist. LEXIS 25445
(D. Colo. Mar. 3, 2010)...........................................................................................5, 6, 9, 10

*Query v. Maxim Integrated Prods., Inc.*,
558 F. Supp. 2d 969 (N.D. Cal. 2008) ...................................................................................7

*Sabbagh v. Cell Therapeutics, Inc.*,
No. C10-414MJP, 2010 U.S. Dist. LEXIS 93614 (W.D. Wash. Aug. 2, 2010) .......................10

**STATUTES**

15 U.S.C. §§ 78u-4 ............................................................................................................... *passim*

15 U.S.C. § 78j(b) ..........................................................................................................................1

15 U.S.C. § 78t(a) ..........................................................................................................................1

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5....................................................................................................................1

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

Movants John Allen, Peter Casale, Michael Fitzpatrick and Harry Yianni (collectively, the "Allen Group" or the "Group"), on behalf of itself and the Class defined herein, respectfully submits this memorandum of law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of its motion for the entry of an order: (1) appointing the Allen Group as Lead Plaintiff for the Action; and (2) approving the Allen Group's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.

## PRELIMINARY STATEMENT

Presently pending in this District is a securities class action (the "Action") brought on behalf of a putative class (the "Class") of investors who suffered damages as a result of their transactions in Molycorp, Inc. ("Molycorp" or the "Company") common stock between March 9, 2011 and November 10, 2011, inclusive (the "Class Period"). The Action alleges violations of §§ 10(b) and 20(a) of the Exchange Act and Securities Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.   In connection therewith, various movants seek:  (1) to be appointed lead plaintiff; and (2) to approve their selection for lead counsel.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint as lead plaintiff the "person or group of persons" who demonstrate the "largest financial interest in the litigation" and also satisfy Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

With total losses of $216,509.92 when calculated using a first in, first out ("FIFO") methodology, and losses of $174,204.04 when calculated using a last in, first out ("LIFO") methodology, the Allen Group, to the best of counsels' knowledge, has the largest financial interest in the litigation of any movant.  Accordingly, the Allen Group is the presumptive Lead

1

Plaintiff.  The Allen Group also satisfies Rule 23's typicality and adequacy requirements.  The Allen Group's claims are typical of the Class's claims because it suffered losses in its Molycorp investments as a result of the defendants' false and misleading statements.  Further, the Allen Group has no conflict with the Class and will adequately protect the Class's interests given the Allen Group's significant stake in the litigation and its conduct to date in prosecuting the litigation, including (1) the Group's submission of the requisite certifications and (2) the Group's selection of experienced class counsel.

Lastly, if appointed Lead Plaintiff, the Allen Group is entitled to select, subject to the Court's approval, lead counsel to represent the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Allen Group has engaged the Faruqi Firm for this purpose.  The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced plaintiffs' firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, the Allen Group's motion should be granted in its entirety.

## FACTUAL BACKGROUND

Molycorp is a rare earth oxide ("REO") producer and owns one of the world's largest fully developed rare earth projects outside of China.  REO is essential in many industries, including clean-energy technologies, high-technology applications such as cellular phones and digital music players, critical defense applications, and advanced water treatment.

Beginning on March 9, 2011, defendants' false and misleading statements about the capability of the Company's "Mountain Pass" mining operation and the Company's earnings caused Molycorp common stock to trade at artificially inflated prices throughout the Class Period.  Specifically, Molycorp filed it 2010 Form 10-K with the SEC on that date, stating, in part:

2

**Our Mine Process and Development Plans**

We and SRK Consulting (U.S.), Inc., or SRK Consulting, estimated total proven reserves as of February 6, 2010 of 88.0 million pounds of REO contained in 0.480 million tons of ore, with an average ore grade of 9.38%, and probable reserves of 2.12 billion pounds of REO contained in 13.108 million tons of ore, with an average ore grade of 8.20%, in each case using a cut-off grade of 5.0%, at our Mountain Pass mine. Upon the completion of our initial modernization and expansion plan, which we expect to be completed by the end of 2012, we expect to have the ability to produce approximately 19,050 mt of REO per year at our Mountain Pass facility. Upon the completion of our recently approved capacity expansion plan, by the end of 2013, we expect to have the ability to produce approximately 40,000 mt of REO per year at our Mountain Pass facility, or approximately double the amount we will be able to produce upon completion of our initial plan. Based on our estimated reserves and an expected annual production rate of approximately 19,050 mt of REO under our initian modernization and expansion plan, our expected mine life is in excess of 30 years . . . .

On or about June 7, 2011, Molycorp filed with the SEC a Form S-1/A Registration Statement ("Registration Statement") for the secondary offering of 11.5 million shares of Molycorp stock.  Both of the Individual Defendants signed the Registration Statement.  The Registration Statement highlighted the Company's plans for the expansion of its Mountain Pass mine and the need to obtain funding to support the expansion, as well as the relative strengths of the Company and its Mountain Pass mining facility.

On August 11, 2011, Molycorp filed its Form 10-Q with the SEC, stating the Company's expectation to have "the capacity to efficiently produce at a rate of approximately 19,050 mt of REO per year by the end of 2012 [at the Mountain Pass mine].  Additionally, upon the completion of our capacity expansion plan, we expect to have the ability to produce up to approximately 40,000 mt of REO per year by the end of 2013."

However, these statements were materially false and misleading when made because defendants misrepresented and failed to disclose that Molycorp's development and expansion of

3

the Mountain Pass mine was not progressing on schedule and would not allow the Company to

reach REO production rates at the end of calendar 2012 and 2013.

On September 20, 2011, a J.P. Morgan securities analyst cut the target price of Molycorp

by half based on lack of demand for the Company's REOs, causing the value of the Company's

stock to drop from a September 19, 2011 closing price of $53.01 per share to a low of $41.33 per

share on September 20, 2011.  This drop represented a 22% decrease on heavy trading volume.

Finally, on November 10, 2011, the Company reported third quarter 2011 revenues and earnings

results well below analysts' estimates and announced a reduction in Mountain Pass production

guidance for the fourth quarter of 2011.  On this news, the Company's stock price plummeted

again, dropping from $38.70 per share on November 10, 2011 to $33.45 per share on November

11, 2011, or 13.6%, on heavy trading volume.

The Action represents the only chance Class members will have to receive compensation

for being defrauded, and the Allen Group seeks to ensure that investors receive the maximum

possible recovery.

ARGUMENT

I.   **THE ALLEN GROUP SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS**

A.   **The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff**

The PSLRA governs the appointment of a lead plaintiff for "each private action arising

under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules

of Civil Procedure."  15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I).  It provides that within 20 days of

the filing of the action, the plaintiff is required to publish notice in a widely circulated business-

oriented publication or wire service, informing class members of their right to move the Court,

within 60 days of the publication, for appointment as lead plaintiff.  *See In re Level 3 Communs.,*

4

*Inc. Secs. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at *5 (D. Colo.

May 4, 2009) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by

class members and is to appoint as lead plaintiff the "member or members" that the Court

determines to be "most capable of adequately representing the interests of class members."[1]

Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the

person that:

> (aa)    has either filed the complaint or made a motion in response to a
>         notice (published by a complainant);
>
> (bb)    in the determination of the court, has the largest financial interest
>         in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal
>         Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM,

2010 U.S. Dist. LEXIS 25445, at *4 (D. Colo. Mar. 3, 2010) (describing the PSLRA's three-step

competitive process for determining the "most adequate plaintiff"); *In re Crocs, Inc. Sec. Litig.*,

No. 07-cv-02351-REB-KLM, 2008 U.S. Dist. LEXIS 87524, at *5 (D. Colo. Sept. 17, 2008)

(same).

Once it is determined who among the movants seeking appointment as lead plaintiff is

the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class

member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the

---

[1]     For the reasons stated herein, the Allen Group contends it is a small, cohesive group capable of effectively managing the litigation.  In the alternative, however, should the Court decline to appoint a group, the Allen Group respectfully requests the Court to examine the individual losses of the members comprising the Group in order to identify the presumptive lead plaintiff.

interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Zynex, Inc.*, 2010 U.S. Dist. LEXIS 25445, at *6-8.

### B.     Under The PSLRA, The Allen Group Should Be Appointed Lead Plaintiff

As discussed below, the Allen Group should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, the Allen Group holds the largest financial interest of any movant, and the Allen Group otherwise satisfies Rule 23's typicality and adequacy requirements.

#### 1.     The Allen Group Filed a Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the original plaintiff was required to publish notice of the complaint within twenty (20) days of its filing.  Counsel for Angelo Albano published notice of the lead plaintiff deadline via *Business Wire* on February 3, 2012.[2]  *See* Villanueva Decl., Ex. A.[3]  Consequently, any member of the proposed Class in the Action was required to seek to be appointed lead plaintiff within 60 days after publication of the notice (*i.e.*, on or before April 3, 2012).  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Thus, the Allen Group's motion is timely filed.  Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, the Allen Group timely signed and submitted the requisite certifications, identifying all of the Allen Group's relevant Molycorp trades during the Class Period, and detailing the Allen Group's

---

[2]      Publication by *Business Wire* is an adequate means for meeting the statutory requirement that notice be published "in a widely-circulated business-oriented publication or wire service." *See In re Nice Sys., Ltd. Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

[3]      All references to Exhibits are references to the exhibits annexed to the Declaration of Jeffrey M. Villanueva, dated April 3, 2012, filed in support hereof.

suitability to serve as lead plaintiff in this case.  *See* Villanueva Decl., Ex. B.  The PSLRA's

procedural requirements have therefore been met.

### 2.    The Allen Group Has the Largest Financial Interest in the Relief Sought By the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate

plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief

sought by the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to the methodology courts are to use in determining

which movant has the largest financial interest in the relief sought, courts in this Circuit and

around the country often look to four factors in the inquiry:  (1) the number of shares purchased

by the movant during the Class Period; (2) the number of net shares purchased by the movant

during the Class Period; (3) the total net funds expended by the movant during the Class Period;

and (4) the approximate losses suffered by the movant.  *See In re Ribozyme Pharms., Inc. Sec.*

*Litig.*, 192 F.R.D. 656, 660-61 (D. Colo. 2000); *Query v. Maxim Integrated Prods., Inc.*, 558 F.

Supp. 2d 969, 973 (N.D. Cal. 2008); *see also In re Crocs, Inc.*, 2008 U.S. Dist. LEXIS 87524, at

*6 (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).  Courts have

placed the most emphasis on the last of the four factors:  the approximate loss suffered by the

movant.  *See In re Diamond Foods, Inc. Sec. Litig.*, No. C-11-05386 WHA, 2012 U.S. Dist.

LEXIS 38497, at *8 (N.D. Cal. Mar. 20, 2012); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128

(S.D.N.Y. 2011).

Overall, the Allen Group suffered losses of $216,509.92 when calculated using FIFO methodology, and $174,204.04 under LIFO methodology.[4]  *See* Villanueva Decl., Exs. C and D. The Allen Group is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.     The Allen Group Meets Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff satisfy Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B).  When assessing potential lead plaintiffs, only Rule 23(a)'s typicality and adequacy requirements are relevant.  *In re Crocs, Inc.*, 2008 U.S. Dist. LEXIS 87524, at *7 ("As for the requirement that the lead plaintiff otherwise satisfy the requirements of Rule 23, only two of the four requirements of Rule 23(a) -- typicality and adequacy -- impact the analysis of the lead plaintiff issue.").

The "typicality requirement" is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists where the "injury and the conduct are sufficiently similar." *In re Crocs, Inc.*, 2008 U.S. Dist. LEXIS 87524, at *7 (citation and internal quotation marks omitted).  Although different plaintiffs may invoke different factual circumstances, typicality is present "so long as the claims of the class representative and class members are based upon the same legal or remedial theory." *Id.* (citation and internal quotation marks omitted).

---

[4]     Because the Allen Group held shares through the end of the Class Period, losses are calculated based on Molycorp's average closing price of $28.9951 per share between November 11, 2011 and February 9, 2012, which represents the 90-day period immediately following dissemination to the market of the information correcting the omissions and misstatements inflating the share price.  *See* 15 U.S.C. § 78u-4(e)(1).  These calculations are solely for purposes of this motion and are not meant to represent the amount of, or method of calculation of, damages that plaintiffs may present at trial.

The Allen Group's claims are clearly typical of the Class's claims.  The Allen Group purchased Molycorp's common stock during the Class Period, suffered damages as a result of the Company's false and misleading statements, and possesses claims against Molycorp and its officers and/or directors under the federal securities laws.  Because the factual and legal bases of the Allen Group's claims are similar, if not identical, to those of the Class's claims, the Allen Group necessarily satisfies the typicality requirement.  *See In re Ribozyme*, 192 F.R.D. at 658 (finding plaintiff group typical where it: (1) purchased defendant stock during the relevant time period; (2) at prices alleged to be artificially inflated by the false and misleading statements issued by defendants; (3) causing damages).

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the Class."  The requirement of adequacy is satisfied on proof of (1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation.  *See In re Crocs, Inc.*, 2008 U.S. Dist. LEXIS 87524, at *7-8 (citation and internal quotation marks omitted).

As evidenced by the representations in the Allen Group's certifications, its interests are perfectly aligned with – and by no means antagonistic to – the interests of the Class.  *See Zynex, Inc.*, 2010 U.S. Dist. LEXIS 25445, at *8-9 (movants' certifications evidenced adequacy to serve as lead plaintiff).

In fact, the Group is comprised of knowledgeable and active investors who have coordinated their efforts in order to protect the interest of the class.  The size of the group is small and manageable, and the group is prepared to act cohesively to control and oversee the litigation independent of counsel.  *See In re Crocs, Inc.*, 2008 U.S. Dist. LEXIS 87524, at *10

n.5 ("The PSLRA specifically contemplates that a "group of persons" may serve as lead

plaintiff."); *In re Ribozyme*, 192 F.R.D. at 659-60 ("This court found that the lead plaintiff group

should be limited to no more than three to five members."); *see also Sabbagh v. Cell*

*Therapeutics, Inc.*, No. C10-414MJP, 2010 U.S. Dist. LEXIS 93614, at \*417-18 (W.D. Wash.

Aug. 2, 2010); *In re Gentiva Secs. Litig.*, No. 10-cv-5064 (ADS)(WDW), 2012 U.S. Dist. LEXIS

9177, at \*31 (E.D.N.Y. Jan. 26, 2012) ("'[I]t is clear that the express language of the PSLRA

permits the appointment of a person or group persons to be lead plaintiff.'").

      Moreover, the Allen Group selected and retained highly competent counsel to litigate the

claims on behalf of itself and the Class.  As explained below in Section III, the Faruqi Firm is

highly regarded for its experience, knowledge, and ability to conduct complex securities class

action litigation.  *See* Villanueva Decl., Ex. E.  Consequently, the Allen Group is more than

adequate to represent the Class and has every incentive to maximize the Class's recovery.

      In light of the foregoing, the Allen Group respectfully submits that it is the presumptive

Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## II.    THE COURT SHOULD APPROVE THE ALLEN GROUP'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL

      Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain

lead counsel for the Class, subject to the Court's approval.  The Allen Group has selected the

Faruqi Firm to be Lead Counsel for the Class.  As reflected in the firm's resume, the Faruqi Firm

possesses extensive experience litigating complex class actions on behalf of plaintiffs, including

securities class actions.  *See* Villanueva Decl., Ex. E.  Accordingly, the Faruqi Firm is well

qualified to represent the Class, and the Allen Group requests that the Court approve its selection

of the Faruqi Firm as Lead Counsel for the putative Class.  *See Zynex, Inc.*, 2010 U.S. Dist.

LEXIS 25445, at \*9-10.

## CONCLUSION

For the foregoing reasons, the Allen Group respectfully requests that the Court:  (1) appoint the Allen Group as Lead Plaintiff for the Action; (2) in the alternative, should the Court decline to appoint a group, the Allen Group respectfully requests the Court to examine the individual losses of the members comprising the Group in order to identify the presumptive lead plaintiff; (3) approve the Allen Group's selection of the Faruqi Firm as Lead Counsel for the Class; and (4) grant such other relief as the Court may deem just and proper.

Dated:  April 3, 2012

Respectfully submitted,

By: */s/ Jeffrey M. Villanueva*

**JEFFREY M. VILLANUEVA, P.C.**
1755 Blake Street, Suite 225
Denver, Colorado 80202
303-295-7525


*Liaison Counsel for the Allen Group*

**FARUQI & FARUQI, LLP**
Richard W. Gonnello
rgonnello@faruqilaw.com
Francis P. McConville
fmcconville@faruqilaw.com
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: (212) 983-9330
Fax: (212) 983-9331

*Attorneys for Movant the Allen Group and
Proposed Lead Counsel for the Class*

11