**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-CV-0292-WJM-KMT

Angelo Albano, Individually and On Behalf of All Others Similarly Situated,

    Plaintiff,

v.

MOLYCORP, INC., MARK A. SMITH and JAMES S. ALLEN

    Defendants.

---

**MEMORANDUM OF LAW OF EDWARD ALEXANDER IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

---

Lead Plaintiff Movant Edward Alexander ("Alexander") respectfully submits this memorandum of law in further support of his Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Dkt. #23), and in opposition to competing motions filed the Molycorp Shareholder Group (the "Molycorp Group"), Sean L. Harrington ("Harrington"), Gordon Bratter ("Bratter"), and the Allen Group (the "Allen Group"). The Court should appoint Alexander as Lead Plaintiff, and deny the motions filed by Molycorp, Harrington, Bratter, and the Allen Group, as Alexander is the "most adequate plaintiff" within the meaning of the Private

Securities Litigation Reform Act of 1995 (the "PSLRA"), and approve his selection of Izard Nobel LLP as Lead Counsel.[1]

## I.      INTRODUCTION

Lead Plaintiff Movant Edward Alexander is the "most adequate plaintiff" within the meaning of the PSLRA because he has the largest financial interest of any lead plaintiff movant who can satisfy the requirements of Rule 23(a). The two "groups" with aggregated losses that are purportedly larger than Mr. Alexander's recoverable losses (the Molycorp Group and the Allen Group) are not legitimate "movants" under the PSLRA because they consist of unrelated individuals with absolutely no pre-litigation relationship, and were assembled into groups by lawyers solely to obtain lead counsel status. Moreover, neither of the two competing groups has even remotely demonstrated that they comply with the strict requirements for serving as a group plaintiff. The Court should also not appoint either Philip Marner or Donald McAlpin (the only members of any "group" with purportedly larger losses than Mr. Alexander), because both of those individuals have already decided that they did not want to be appointed as lead plaintiff individually. The Court also should not appoint Mr. Bratter, the only individual applicant with larger losses than Alexander, as he – like Marner – was a prolific "day trader" who is not adequate or typical and/or is subject to unique defenses. In contrast, Mr. Alexander is the "most adequate plaintiff" because he did not sell *any* Molycorp shares during the Class Period, and is the only lead plaintiff movant that is not subject to unique defenses.

---

[1] Robert A. Izard and Jeffrey S. Nobel of Izard Nobel LLP are already admitted to practice in the District of Colorado. In the event that the Court appoints Mr. Alexander as lead plaintiff, Mr. Alexander also intends to retain Kip Shuman as Liaison Counsel.

## II.     THE PROCEDURE UNDER THE PSLRA

Under the PSLRA, the district court must appoint the member of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class (the "most adequate plaintiff"). 15 U.S.C. § 78u-4 (a) (3) (B) (i). The "presumptive" most adequate plaintiff is the person or group of persons that "in the determination of the court, has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

No class member may be the "presumptive" lead plaintiff without satisfying the adequacy and typicality requirements of Rule 23. *See, e.g., In re Level 3 Communications, Inc. Sec. Litig.,* Civil Action No. 09-cv-00200-PAB-CBS, page 3 (D. Colo. May 4, 2009) ("With respect to the Reform Act's requirement that a potential lead plaintiff 'otherwise satisfy Rule 23,' the Court considers only the adequacy and typicality requirements at this stage of the proceedings"). Furthermore, the district court must *reject* a presumptive lead plaintiff that "will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). A class representative whose right to recover in the litigation is subject to "unique defenses" is not a proper class representative because its claims are not "typical" of the class, and the conduct necessary to litigate those defenses will distract it from its responsibility of establishing the claims of the class (which are not subject to any such "defenses"). "It is undisputed that a movant cannot be selected as lead plaintiff if the unique defenses that it faces will distract that plaintiff

from adequately prosecuting the litigation on behalf of the class." *In re Cable & Wireless. PLC Sec. Litig.*, 217 F.R.D. 372, 277 (E.D. Va. 2003).

### III. The Court Should Deny The Motions Of The Molycorp And Allen Groups

The Court should deny the motions of the Molycorp and the Allen Groups.[2] First, each group is an improper group under the PSLRA because its members have no pre-existing relationship. Second, each of these so-called groups has failed to meet the evidentiary burdens of proof under *In re Level 3 Communications, Inc. Sec. Litig.* Third, it would be improper to appoint either of the two members of the Molycorp Group with purportedly larger losses than Mr. Alexander because each stated, under oath, that they had already decided that did not want to seek appointment as lead plaintiff individually. Finally, the Court should not appoint Mr. Marner as he was a prolific day trader.

#### A. The Molycorp and Allen Groups are Improper Groups Under The PSLRA

The Molycorp and Allen Groups constitute improper groups under 15 U.S.C. §78u-4(a)(3)(B) of the PSLRA, because the "members" of each of these so-called "groups" do not have a pre-existing relationship, and were simply "cobbled together" by multiple law firms in order to aggregate their financial interests for purposes of the lead plaintiff motion. Congress enacted the PSLRA in order to end manipulation of class actions by class action lawyers (including the lead plaintiff appointment process). As a result, "groups comprised of individuals

---

[2] The Allen Group is composed of John Allen, who claimed losses of $66,609; Henry Yianni, who claimed losses of $66,519; Peter Casale, who claimed losses of $49,196; and Michael Fitzpatrick, who claimed losses of $34,884. The Molycorp Group consists of Philip Marner, who claimed losses of $396,816; Donald McAlpin, who claimed losses of $172,747; Jerry W. Jewell and The Jerry W. Jewell Trust, which claimed combined losses of $73,962; and Randall Duck, who claimed losses of $62,081.

and entities having no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel should not be appointed lead plaintiff under the Reform Act." *In re Level 3 Communications,* at 6-8 (Court denied the lead plaintiff motion of a group with the largest financial interest on the ground that it was an improper group under the PSLRA because its members had no pre-litigation relationship), *In re Level 3 Communications, Inc. Sec. Litig.,* Civil Action No. 09-cv-00200-PAB-CBS, 2009 WL 1542723 (D. Colo. May 29, 2009) (motion for reconsideration denied). As Judge Kane explained in denying several lead plaintiff motions by groups consisting of "members" with no pre-litigation relationship in *In re Oppenheimer Rochester Funds Group Sec. Litig.,* Civil Action No. 09-md-02063-JLK-KMT, 2009 WL 4016635 (D. Colo. Nov. 18, 2009):

> groups of individual investors would not be appointed lead plaintiff in this case in the absence of evidence demonstrating the group had a "purpose, organization or some kind of connection or affinity *before* " they came together to aggregate their financial interest and pursue appointment as lead plaintiff. 7/15/09 Hg. Tr. at p. 107 (emphasis added). Because the parties continue to wrangle about what I meant by that statement, I will reiterate it: Groups of individuals who came together solely for the purpose of pursuing a motion for appointment as lead plaintiff will not be appointed lead plaintiff in these cases. Only groups of individuals having some pre-existing relationship (i.e. husbands and wives or investor groups or clubs who moved together to buy and sell shares before legal action was taken or threatened) will be considered appropriate groups under the PSLRA's lead plaintiff provisions. Individuals who came together only after the legal action commenced and solely for purposes of aggregating their financial interest for purposes of the most adequate plaintiff presumption need not apply.

*Id. at , \*\*6-7.*[3]

---

[3] Courts throughout the country have refused to appoint lead plaintiff groups consisting of unrelated individuals with no pre-litigation relationship. *See, e.g., Eichenholtz v. Verifone Holdings, Inc*., No. C-07-06140 (MHP), 2008 WL 3925289, at \*7 (N.D. Cal. Aug. 22, 2008) (unrelated groups of individuals, brought together solely for the purpose of aggregating their claims in an effort to become the presumptive lead plaintiff fail to meet the adequacy prong of

Here, it is undisputed that none of the "members" of the Molycorp or Allen Groups have any pre-litigation relationship, but were simply aggregated together by various lawyers for the purpose of obtaining lead plaintiff status. As a result, the Court should refuse to appoint either the Molycorp or Allen Groups as lead plaintiff.

### B.  The Molycorp and Allen Groups Have Not Met Their Burden Under *Level 3*

---

Rule 23); *In re Opnext, Inc. Sec. Litig.*, No. 08-920 (JAP), 2008 WL 3285732 at *3 (D.N.J. Aug. 7, 2008) (in denying a motion for reconsideration, the court reiterated that it found two married couples to have formed a group solely for the purpose of seeking lead plaintiff appointment and declined to find them to be a cohesive group); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 19-20 (D.D.C. 2006) (in denying lead plaintiff motion submitted by unrelated class members the Court reasoned that "attempts to aggregate unrelated plaintiffs into artificial groups [was] the work of lawyers and in contravention of the policies underlying the PSLRA"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006) ("allowing unrelated groups to aggregate investments in an effort to generate the 'largest financial interest,' a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation"); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002) ("courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001), (refused to appoint as lead plaintiff a group of unrelated individuals, brought together for the sole purpose of becoming the presumptive lead plaintiff); *In re Landry's Seafood Restaurant, Inc., Sec. Litig.*, No. H-99-1948, 2000 U.S. Dist. LEXIS 7005 (S.D. Tex. March 30, 2000) (a group of person requires a "pre-litigation relationship based on more than their losing investment"); *In re Waste Management, Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) (group seeking appointment as lead plaintiff must have a pre-litigation relationship); and *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153 (N.D. Cal. 1999) ("group" must have "a meaningful relationship preceding the litigation," and be "united by more than the mere happenstance of having bought the same securities"); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 809-13 (N.D. Ohio 1999) (a group of persons cannot be "a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys."); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y.1997) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.... To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation").

Even assuming, *arguendo,* that it is permissible, under certain circumstances, to allow groups of unrelated investors with no pre-litigation relationship to move as a group for appointment as "lead plaintiff," neither the Molycorp nor Allen Groups have met their heavy burden under *Level 3*. At a minimum, the members of a group must provide evidence concerning: (1) how the group was formed, (2) that its members were "aware of one another prior to their interaction with their joint counsel" and (3) how its members will act in a cohesive way to affirmatively control the litigation and their lawyers, including their procedure for making decisions and resolving disputes. *See In re Level 3 Communications,* at 8-9.[4]

Neither of the competing groups has even remotely satisfied their evidentiary burden. The Allen Group submitted no evidence on any of these three *Level 3* requirements.[5] Similarly,

---

[4] Courts throughout the country have required extensive evidentiary showings on a multitude of similar issues concerning a group's ability to cohesively control the litigation, such as: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; and (4) whether the members chose outside counsel, and not vice versa. *See, Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (rejecting proposed group that did not proffer an evidentiary showing that unrelated members would be able to function cohesively and to effectively manage the litigation apart from their lawyers); *In re Tarragon Corp. Sec. Litig.,* No. 07 CV 7972 (PKC), 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (rejecting applications from two groups that provided no evidentiary basis for aggregation); *Eichenholtz v. Verifone Holdings, Inc.,* No. C-07-06140 (MHP), 2008 WL 3925289 at *9 (N.D. Cal. Aug. 22, 2008) (declining to appoint a group that only offered conclusory statements, but did not show how and when they were joined together or demonstrate how they will coordinate their efforts in the litigation) *Tsirekidze v. Syntax-Brillian Corp.,* No. 07-2204 (PHX-FJM), 2008 WL 942273 at *4 (D. Ariz. Apr. 7, 2008) (declining to appoint a group who did not provide sufficient evidence that they plan to work together as a cohesive unit).

[5] The Allen Group's motion should also be denied as untimely. The Declaration of Jeffrey M. Villanueva in Support of the Allen Group's Motion for Appointment as Lead Plaintiff [Dkt. #31], which contained the Certifications of the "members" of the Allen Group was submitted on

the Molycorp Group failed to provide any evidence whatsoever concerning two of the three requirements: how their "group" was formed, and whether its members were aware of each other prior to being joined together by their joint counsel. Moreover, the evidence they submitted as to the third *Level 3* requirement undermines their claims. The "Joint Declaration" [Dkt. #29-4 and 32-1] makes painfully clear that, contrary to the conclusory assertions of proposed Co-Lead Counsel (Molycorp Group Motion at 6) [Dkt. #27 at 6], the Molycorp Group will not be able to function as a cohesive group, and that their decision-making and dispute resolution process will result in an inefficient and ineffective prosecution of this case. For example, the mechanism for resolving disagreements virtually guarantees that there will be lengthy and expensive delays in the prosecution of this litigation in the event that its members cannot agree on a "litigation decision":

> [S]hould a disagreement occur, we agree that a majority vote will control our decisions. In the unlikely event that a majority vote cannot be reached, we agree to present our respective views to an independent arbitrator and to be bound by any decisions made by the arbitrator. Counsel may select any arbitrator they deem qualified to resolve disputes so long as the arbitrator has previously served as a state or federal judge.

Joint Declaration, para. 12.

---

April 4, 2012, which was after the strict sixty (60) day deadline imposed by the PSLRA, which provides that lead plaintiff motions must be filed "not later than 60 days after notice is published." 15 U.S.C. §78u-4(a)(3)(A)(II). Since notice in this case was published on February 3, 2012, the deadline to file a lead plaintiff motion was April 3, 2012. Consequently, because the Allen Group did not provide information concerning its financial interest within the 60 day window, its motion should not be considered. *In re Telxon Corp. Sec. Litig.,* 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed").

It is easy to predict just some of the significant problems that will likely result under this framework.  First, since there are four Molycorp Group "members," the three members with the smallest financial interests among the group will be able to make ***all*** litigation decisions – not the member with the largest financial interest.  The result apparently insisted upon by the members of the Molycorp Group – allowing class members with the ***smallest*** losses to control the litigation -- is precisely the opposite of the result envisioned by the PSLRA.  And, of even greater concern, every time two "members" of the Molycorp Group disagree with the other two "members" on ***any*** litigation decision (regardless of the size of their losses), the prosecution of the entire litigation will have to be "put on hold" until all of the "members" resolve their dispute through an expensive arbitration with a former judge. Not only is the Joint Declaration utterly silent on the issue of who will ***pay*** these arbitration costs, it is devoid of any explanation whatsoever of how the prosecution of the litigation will continue while these members are arbitrating their disputes.

### C. The Court Should Not Appoint Any Member Of Any Group As Lead Plaintiff Individually

Under *Level 3*, in the event that the Court refuses to appoint a group of unrelated investors, the Court may appoint an individual member of a group if and only if the individual member requests appointment in the alternative.  *In re Level 3 Communications,* at 10. Here, no one from the Allen Group requested appointment as an individual, and none of them should be considered individually.  The same is even more true of the Molycorp Group, as each of the members of the Molycorp Group affirmatively represented that he did ***not*** want to be appointed as a lead plaintiff individually:

> We *understand that each of us could have chosen to pursue individual actions, made a motion for appointment as Lead Plaintiff individually* or could have taken no action remained absent class members. *However*, based on our respective financial losses and to gain the advantages of joint decision-making and to provide the class broad representation, *we affirmatively decided that it would be a benefit to ourselves and the class we seek to represent if we jointly sought appointment as Lead Plaintiff in a small cohesive group*. The members of the Molycorp Shareholder Group agree that joint prosecution of this action will be in the best interests of class members. These reasons, along with our commitment to ensure that the class' claims are efficiently prosecuted, motivated us to seek appointment with one another.

Joint Declaration, para. 8 (emphasis added).

Contrary to the language in the Joint Declaration, and presumably aware that the Court might not look favorably on appointment of a "group" that had nothing in common besides their choice of lawyers, counsel for the Molycorp Group suggest in a footnote that the Court should appoint Mr. Marner as Lead Plaintiff in the event that the Court declines to appoint the group. Molycorp Group Motion at 7, footnote 2.

However, given that Mr. Marner himself decided not seek appointment individually in the event that the Court declined to appoint the group,[6] it would be improper to grant any request by Mr. Marner's lawyers to appoint him as a lead plaintiff. *See, e.g., In re Level 3 Communications,* at 10 (declining to consider appointment of one of the members of a "group" who had a larger loss than another individual plaintiff because "the Level 3 Plaintiffs Group did not request that any of its constituents be appointed as lead plaintiff individually in the event that

---

[6] No doubt counsel will endeavor to correct this "oversight" by filing a new declaration from Mr. Marner with their Reply Brief. That they never sought to obtain such a declaration from Mr. Marner prior to filing their Motion and brief is further indication that counsel are driving the litigation, rather than their clients.

the Court declined to appoint the group").[7] Therefore, counsel's request to appoint Mr. Marner should be denied.

### D. Marner Is Not The Most Adequate Plaintiff

Even if the Court considered the "request to have Mr. Marner appointed individually (contrary to Marner's sworn testimony in the Joint Declaration), his "day trading" and "in-and-out" transactions demonstrate that he is not an "adequate" or "typical" plaintiff under Rule 23 and subject to unique defenses, thereby disqualifying him as a lead plaintiff under section 78u-4(a)(3)(B)(iii) (II) of the PSLRA. Courts have repeatedly held that that "day traders" and "in-and-out" traders cannot satisfy the "most adequate plaintiff" requirements because their trading practices render their claims atypical under Rule 23(a) and/or are subject those claims to unique defenses. *See, e.g., In re Safeguard Scientifics*, 216 F.R.D. 577, 583 (E.D.Pa. 2003) (day-trader precluded from serving as a class representative on a motion for class certification because he was subject to unique defenses since day traders typically focus on technical price movements rather than price); *Eichenholtz v. Verifone Holdings, Inc.*, No. C-07-06140 (MHP), 2008 WL 3925289, at *10–11 (N.D. Cal Aug. 22, 2008) (day-trader was not typical because the class's damages stem from reliance on financial statements, not daily market volatility and the day-trader may be subject to unique defenses regarding its reliance on publicly available information); *Applestein v. Medivation, Inc.*, No. C 10-00998 (MHP), 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (on motion for appointment as lead plaintiff, the court found the likelihood that a movant who had claimed the largest losses in the litigation was a day-trader was

---

[7] The Court should also not appoint Mr. McAlpin or any other individual Molycorp Group member as lead plaintiff, as no request was made that the Court appoint them individually in the event that the Court declined to appoint the Molycorp Group.

11

sufficient "to raise serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions made" and rebutted the presumption that he should be appointed as lead plaintiff); *In re Opnext, Inc. Sec. Litig.*, No. 08-920 (JAP), 2008 WL 3285732 at *3 (D.N.J. Aug. 7, 2008) (day-trader found to be susceptible to unique defenses that do not apply to other class members); *Tsirekidze v. Syntax-Brillian Corp.,* 2008, No. CV-07-2204 (PHX-FJM), WL 942273 at *4 (D. Ariz. Apr. 7, 2008) (lead plaintiff movant who was a day trader might be subject to the unique defenses and should not represent the class).

A review of Mr. Marner's class period transaction records demonstrate that he was a prolific day-trader who was "in-and-out" of Molycorp stock numerous times throughout the Class Period, subjecting him to unique defenses. In fact, on seven different dates during the Class Period, Mr. Marner sold all shares purchased on the same day he bought them. On those occasions which he did not sell all of his shares on the day of purchase, Mr. Marner was often "in and out" of Molycorp stock within just one or two days.[8] *See Declaration of Jeffrey A. Berens* (Marner Certification, Ex. B) [Dkt. # 29-2] at 6-9. In total, Mr. Marner sold 199,013 of the 200,013, or 99.5%, of the Molycorp shares that he purchased during the Class Period.

Moreover, Marner's in-and-out trading creates questions with respect to whether he can establish loss causation for the vast majority of the damages that he claims. As the Molycorp

---

[8] Mr. Marner made the following day or in-and-out trades: March 30-April 1, 2011 (in-and-out trades of 15,000 shares), April 4, 2011 (day trade of 20,000 shares), April 5-8, 2011 (in-and-out trades of 25,000 shares), April 11, 2011 (day trade of 8,500 shares), April 12, 2011 (day trade of 2,000 shares), April 15, 2011 (day trade of 23,118 shares), April 18, 2011 (day trade of 11,900 shares); April 21-25, 2011 (in-and-out trades of 7,500 shares), May 3, 2011 (day trades of 47,495 shares), and June 14, 2011 (day trade of 2,000 shares).

Group asserts in their Motion, the Class Period ends in this case on November 10, 2011, due to the disclosures by Molycorp on November 10, 2011. *See Motion to Appoint The Molycorp Shareholder Group as Lead Plaintiff and Approve Selection of Lead Counsel* [Dkt. # 27] at 2-3. However, $360,286 of Marner's purported $396,816 in losses are derived from his sale of 199,013 shares of Molycorp stock (out of his 200,013 shares purchased during the Class Period) well *before* Molycorp's November 10, 2011 disclosures.[9] As this Court has previously held, alleged losses from stock sales occurring "prior to the first negative disclosure by the company" cannot be used to calculate a movant's "financial interest" under the PSLRA, as any such losses are not recoverable under *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). *In re Level 3 Communications, at* 4-5 (Court held that it was improper for lead plaintiff movant to use losses from class period sales as part of calculation of "financial interest" under the PSLRA); *In re Level 3 Communications,* 2009 WL 1542723 *see Verifone*, 2008 WL 3925289 at *3 (N.D. Cal. Aug. 22, 2008) (losses of shares bought and sold before a disclosure could not be included in lead plaintiff movant's loss calculation); *In re MicroStrategy,* 110 F. Supp. 2d 427, 437 & n. 23 (E.D.Va. 2000) (court rejected lead plaintiff movant due to fact that it sold most of its shares before defendants issued first corrective disclosure). Using the rules for calculating a lead plaintiff movant's *recoverable* losses with respect to the 1,000 shares

---

[9] While paragraph 23 of the complaint alleges that a "partial disclosure" occurred on September 20, 2011 and caused the stock price to drop prior to the date that Mr. Marner sold his remaining 1,000 shares, the Molycorp Group's Motion does not mention this partial disclosure. (Molycorp Group Motion at 2) [Dkt. #27 at 2]. Accordingly, there is a question whether they believe that the Class will be able to establish that a "partial disclosure" of the fraud occurred on September 20, 2011.

that Marner did not sell during the Class Period, his recoverable losses would only be approximately $36,530.[10]

### E. Bratter's Motion Should Be Denied

The Court should also deny the motion filed by Bratter. While Mr. Bratter claims losses of approximately $299,269 from the purchase of 75,000 shares during the Class Period, Mr. Bratter, like Mr. Marner, was a "day trader" and an "in-and-out" purchaser who is atypical and subject to unique defenses. Accordingly, the Court should not appoint him as lead plaintiff under section 78u-4(a)(3)(B)(iii) (II) of the PSLRA.

Mr. Bratter's day trades are shown in his Certification. *See Motion for Appoint as Lead Plaintiff and Approval of Selection of Lead Counsel of Gordon Bratter* [Dkt. # 28-2].[11] Therefore, 45,000 of the 75,000 shares purchased by Mr. Bratter were pure "day trades," and another 15,000 were "in-and-out trades". Thus, 60,000 of the 75,000 shares purchased by Mr. Bratter, or 80%, were "day trades" or "in-and-out" trades based on market volatility, not the misrepresentations at issue in this case. *See Supra* at § III (D), pages 11-12. These

---

[10] Specifically, the price paid for the 1,000 shares that Marner purchased before the end of the Class Period was $65.55 per share, or a total cost basis of $65,550. Because those 1,000 shares were retained within 90 days following the close of the Class Period, the average closing price for the 90 days following the Class Period is used. Marner's counsel claimed the 90 day average share price was $29.02. Based on this average price, the value of the 1,000 shares retained is $29,020. Accordingly, Marner only suffered a loss of $36,530 ($65,550-$29,020).

[11] Mr. Bratter purchased and sold 60,000 shares of Molycorp stock in 12 separate "day trades" and "in-and-out" trades: March 29, 2011 (day trade of 5,000 shares), April 7, 2011 (day trade of 5,000 shares), April 11-14, 2011 (in-and-out trades of 5,000 shares), April 25, 2011 (day trade of 5,000 shares), April 28, 2011 (day trade of 5,000 shares), May 12, 2011 (day trade of 5,000 shares), June 22, 2011 (day trade of 5,000 shares); June 23-24, 2011 (in-and-out trades of 5,000 shares), June 29-30, 2011 (in-and-out trades of 5,000 shares), July 19, 2011 (day trade of 5,000 shares), July 21, 2011 (day trade of 5,000 shares), and July 22, 2011 (day trade of 5,000 shares).

characteristics of Mr. Bratter's Class Period transactions render him atypical and/or subject to unique defenses, and render him unsuitable for appointment as the "most adequate plaintiff."

### F. The Motion of Harrington Should Be Denied

The Court should also deny the lead plaintiff motion filed by Harrington. Mr. Harrington does not possess the largest financial interest because his purported recoverable losses ($42,838) are well-below the $118,497 in recoverable losses of Mr. Alexander.

### G. Mr. Alexander Is The Most Adequate Plaintiff

Mr. Alexander should be appointed as lead plaintiff because he is the "most adequate plaintiff" within the meaning of the PSLRA. As discussed above, none of the competing groups are proper lead plaintiff movants. And, even if the Court permitted Mr. Marner to move for appointment individually, he, like Mr. Bratter, is not the "most adequate plaintiff" under the PSLRA, because his Class Period trading practices render his claims atypical and subject to unique defenses under 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

In sharp contrast, Mr. Alexander's claims are typical of the Class, and are not subject to unique defenses, because he did not engage in *any* "day trading" or "in-and-out" transactions, and did not sell *any* shares of Molycorp stock during the Class Period. Moreover, Mr. Alexander will adequately protect the interests of the Class because he has selected a law firm (Izard Nobel LLP) with extensive class action experience to act as lead counsel, and has no conflict of interest with the members of the Class. Accordingly, Mr. Alexander is the "most adequate plaintiff" within the meaning of the PSLRA, should be appointed as lead plaintiff, and his selection of Izard Nobel LLP as lead counsel should be approved.

DATED: April 24, 2012						Respectfully submitted,

**IZARD NOBEL LLP**

 /s/ JEFFREY S. NOBEL
JEFFREY S. NOBEL
ROBERT A. IZARD
MARK P. KINDALL (of counsel)
NANCY A. KULESA (of counsel)
29 South Main Street, Suite 215
West Hartford, CT  06107
Telephone:  860/493-6292
FAX:  860/493-6290
E-mail: jnobel@izardnobel.com
E-mail: rizard@izardnobel.com
E-mail: nkulesa@izardnobel.com

*Counsel for Proposed Lead Plaintiff Edward Alexander*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 24, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing system will be sent by e-mail to all parties by operation of the Court's electronic filing system or will be served on all parties not registered for electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ Jeffrey S. Nobel

      Jeffrey S. Nobel