**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-00292-WJM-KMT

ANGELO ALBANO, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

MOLYCORP, INC.,
MARK A SMITH and
JAMES S. ALLEN,

    Defendants.

_____

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GORDON BRATTER FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF LEAD AND LIAISON COUNSEL**

## PRELIMINARY STATEMENT

Presumptive Lead Plaintiff Gordon Bratter ("Mr. Bratter") has triggered the "most adequate plaintiff" presumption by meeting *both* of the Private Securities Litigation Reform Act's ("PSLRA") statutory requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Mr. Bratter has the largest financial interest among movants who "otherwise satisf[y] the requirements of Rule 23." *Id*. Because MSG does not meet both statutory requirements as it is not a cohesive group, no presumption attaches to it. Thus, the presumption in favor of Mr. Bratter can "be rebutted only upon *proof* by a member of the purported plaintiff class that" he will "not fairly and adequately protect the interest of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii) (emphasis added).

Tellingly, only one movant, Edward Alexander ("Alexander"), who has already acknowledged that Mr. Bratter is entitled to the "most adequate plaintiff" presumption, attempts to rebut the presumption by incorrectly asserting that Mr. Bratter is a "day trader" and "in-and-out" purchaser. *See* Alexander Opp. at 14-15 (Dkt. No. 39). The assertion is not a serious effort at rebuttal, but rather a red herring by Alexander whose losses are dramatically smaller than Mr. Bratter's losses. The lack of seriousness with which Alexander takes his own argument is reflected by the fact that Alexander's brief dedicates a total of nine sentences to the proposition that Mr. Bratter is a purported day trader.. *See* Alexander Opp. at 2, 14-15.

The inaccurate characterization of Mr. Bratter as a "day trader" and an "in-and-out" purchaser is not based on any "proof" whatsoever—much less truth. *See* Alexander Opp. at 14. Indeed, Alexander's own brief defeats this notion by admitting that Mr. Bratter's supposed "day

1

trades" occurred on *just 12 days during a 246-day Class Period*. *See* Alexander Opp. at 14, n.11. Further, in stark contrast to an "in-and-out" purchaser, *i.e.*, one who bought and sold all his shares prior to the end of the Class Period, Mr. Bratter held thousands of shares at the end of the Class Period, and has the largest loss of $299,269.03 and largest *Dura* loss of $300,832.45 of any otherwise adequate movant. *See* Bratter's Motion at 7, n.3 (Dkt. No. 28); *see also In re Star Gas Sec. Litig.*, 3:04CV1766 (JBA), 2005 U.S. Dist. LEXIS 5827, at *14 (D. Conn. Apr. 8, 2005) ("there is no evidence that Wertin is an 'in and out trader,' i.e., that he bought and sold all his Star Gas shares within the class period"). Mr. Bratter held shares in Molycorp continuously from May 3, 2011 through the end of the Class Period, which amounts to 191 days out of the 246-day Class Period. In short, Alexander's attacks are demonstrably false.

## ARGUMENT

### (A)   MSG Is Not the Presumptive Lead Plaintiff and Suffers From Fatal Defects

In its opposition, MSG has not addressed any of the fatal defects that prevent MSG from qualifying for the presumption of "most adequate plaintiff." The MSG Joint Declaration, which was signed by only three of four purported members, and which reported a group call attended by only "certain members" of the group, illustrates these incurable defects, which include that the members have no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel and in fact may not even be aware they are a group at all. *See In re Level 3 Commc'ns Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 44706, at *11; *see also In re Crocs, Inc. Sec. Litig.,* 2008 U.S. Dist. LEXIS 87524, at *11 (D. Colo. Sept. 17, 2008); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633 at *25 (N.D. Cal. Aug. 22, 2008); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001); Exh. D of

2

MSG Motion at ¶11 and pp. 7-9 (Dkt. No. 29-4). Further, "by allowing unrelated groups to aggregate losses in an effort to generate the 'largest financial interest', the possibility emerges that lawyers will form such groups to manipulate the selection process, and in that way gain control of the litigation." *In re Gentiva Sec. Litig.*, 10-CV-5064 ADS WDW, 2012 U.S. Dist. LEXIS 9177 at *35-36 (E.D.N.Y. Jan. 26, 2012). Importantly, MSG has not offered any explanation as to why it is a "group in the first place, aside from the obvious motive to aggregate the greatest financial interest among any movant," and thus, the group is not entitled to the "most adequate plaintiff" presumption. *Level 3*, 2009 U.S. Dist. LEXIS 44706, at *16.

Moreover, MSG's commitment to appoint and be bound by the decision of an independent arbitrator "[i]n the unlikely event that a majority vote cannot be reached" is untenable because it stands to strip the members of MSG of their fiduciary duties to control the litigation. MSG Decl. at ¶12; s*ee In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999) ("The lead plaintiff owes a fiduciary duty to all members of the proposed class to provide fair and adequate representation and actively to work with class counsel to obtain the largest recovery for the proposed class consistent with good faith and meritorious advocacy."). With respect to an important aspect of any litigation -- settlement negotiations -- a member of the lead plaintiff group has a fiduciary duty to reject a settlement offer he or she believes to be inadequate, and thus, he cannot agree to be silenced or second-guessed by the decision of an independent arbitrator who would owe no duty to the Class. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d at 1032. MSG's willingness to abdicate its fiduciary responsibilities owed to the Class to an unknown third-party arbitrator is bad enough, but given that the arbitrator also owes no duty to the Class and would be outside this Court's jurisdiction

3

makes the entire idea bizarre, unnecessarily complicated, and plainly not in the best interests of Class members.

MSG appears to fail to understand that under the PSLRA statutory requirements it must demonstrate the cohesiveness of its group *prior* to the "most adequate plaintiff" presumption attaching to a lead plaintiff movant. *See* MSG Opp., at 3-4 (Dkt. No. 37); *Level 3*, 2009 U.S. Dist. LEXIS 44706, at *15. MSG argues that it "is not subject to unique defenses and has explicitly affirmed its commitment to protecting the class' interest," and that "[MSG] has also submitted a Joint Declaration demonstrating its commitment to working together cohesively as a group…" MSG Opp. at 4. Thus, MSG seems to imply that the lead plaintiff presumption has attached to MSG, and unless it is proven that the group will not satisfy typicality and adequacy requirement of Rule 23(a), MSG must be appointed lead plaintiff. *See* MSG Opp., at 4. This is backwards. For MSG to meet the requirements to trigger the presumption: it must have both the largest financial stake *and* must demonstrate the cohesiveness of its group *before* the group is entitled to the presumption of "most adequate" plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) ("an evidentiary showing" is required so that its members "will be able to function cohesively and [will] effectively manage the litigation apart from their lawyers before [being] designated as presumptive lead plaintiffs"); *see also Level 3*, 2009 U.S. Dist. LEXIS 44706, at *15. MSG has not met this evidentiary showing and is not entitled to the "most adequate plaintiff" presumption.[1]

---

[1] Finally, MSG's request – made only in a footnote in its motion, MSG Motion at n.2 and p. 7 (Dkt. No. 27) – to appoint Philip Marner ("Marner") individually if the group fails, despite the lack of any evidence that such a request was timely agreed to by all (or any) of the members of MSG, must be denied. See *Level 3*, 2009 U.S. Dist. LEXIS 44706, at *17. Marner expressly declined the opportunity to move for lead plaintiff individually and instead "affirmatively

4

**(B)   Mr. Bratter Is the Presumptive Lead Plaintiff and No Competing Movants Have Offered Any "Proof" To Rebut The Presumption**

Mr. Bratter is the presumptive lead plaintiff. Alexander acknowledges the presumption in favor of Mr. Bratter. *See* Alexander Opp., at 14-15. This presumption can "be rebutted only upon *proof* by a member of the purported plaintiff class that" the lead plaintiff "will not fairly and adequately protect the interest of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii) (emphasis added). As no member of the Class has rebutted this presumption with proof, Mr. Bratter should be appointed lead plaintiff in this matter.[2]

### a.  Mr. Bratter Is Otherwise Adequate and Typical

Only one movant tries to rebut Mr. Bratter's presumption by incorrectly attempting to portray Mr. Bratter as a "day trader" and an "in-and-out" purchaser, while the other movants (aside from MSG, which does not qualify for the presumption) have effectively conceded by not filing oppositions. Here, Alexander, who at best had the third largest claimed loss, argues that Mr. Bratter is a "day trader" and an "in-and-out" purchaser and is thus inadequate to serve as Lead Plaintiff. *See* Alexander Opp., at 14. Tellingly, in less than one page, using a total of nine sentences, no case law, and without any "proof," Alexander wrongfully asserts that "Mr.

---

decided" that it would be more of a benefit to seek appointment as a group. *See* MSG Decl. at ¶8. At this stage, MSG's lawyers should not be allowed to reverse the stated intentions of the members to move as a group and have Marner inserted individually as lead plaintiff if the group fails. *See Level 3*, 2009 U.S. Dist. LEXIS 44706, at *17; *Tsirekidze v. Syntax-Brillian Corp.*, CV-07-2204, 2008 U.S. Dist. LEXIS 118562, at *15-16 (D. Ariz. Apr. 7, 2008); *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009).

[2] If the Court should find that MSG is entitled to the "most adequate" plaintiff presumption, Mr. Bratter respectfully requests that the Court allow him to conduct limited discovery regarding the group's formation, cohesiveness, and ability to manage the litigation.

Bratter's Class Period transactions render him atypical and/or subject to unique defenses, and render him unsuitable for appointment as the 'most adequate plaintiff.'" *Id*. at 15.[3]

Alexander's argument that Mr. Bratter was a "day trader" and an "in-and-out" purchaser is erroneous. Without defining what makes someone a "day trader," Alexander foists this label on Mr. Bratter, who, according to Alexander's own admission, only made "12 separate 'day trades' and 'in-and-out' trades" throughout a 246-day Class Period. *See* Alexander Opp., at 14, n.11. Here, unlike a "day trader," who, the *Taubenfeld* Court noted, is a "[v]ery active stock trader who holds positions for a very short time and makes several trades each day," Mr. Bratter's certification reflects that he routinely bought and held for the long term, as he did on May 3, 2011 (bought 5,000 shares, sold 2,500 a month-and-a-half later, and still held the other 2,500 as of the date of his certification) and July 26, 2011 (bought 5,000 shares and still held all of them as of the date of his certification). *See Taubenfeld v. Career Educ. Corp.*, 2004 U.S. Dist. LEXIS 4363, at *10, n.2 N.D. Ill. March 19, 2004). Additionally, unlike an "in-and-out" purchaser who purchases and sells all his shares within the class period and, thus, obfuscates loss calculations or has no *Dura* losses, Mr. Bratter held shares in Molycorp continuously from May 3, 2011 through the end of the Class Period (and, for that matter, through the date of his certification), which amounts to 191 days out of the 246-day Class Period. *See Montoya v. Mamma.com Inc.*, 05 CIV. 2313 (HB), 2005 U.S. Dist. LEXIS 10224, at *6 (S.D.N.Y. May 31, 2005) ("'in and out purchasers' are those individuals or entities that purchase and sell shares

---

[3] In fact, in the "Section E" of Alexander's Opp., he cites zero case law for his arguments that Mr. Bratter's motion should be denied. Alexander Opp. at 14. Alexander makes a "day trader" and an "in-and-out" purchaser argument against lead plaintiff movant Marner, and then simply tosses in a conclusory statement, without supporting case law, that these labels also apply to Mr. Bratter. *Id*. at 11-14.

within the class period and, thus, obfuscate loss calculations.") (citing *In re Star Gas Sec. Litig.*, 2005 U.S. Dist. LEXIS 5827, at *14). It is this open position, and not any of the trades of which Alexander complains, that resulted in Mr. Bratter's *Dura* loss of $300,832.45. *See* Bratter's Motion for Appointment as Lead Plaintiff, at 7, n.3 (Dkt. No. 28); *see also Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). There is no evidence whatsoever that Mr. Bratter is a "day trader" or an "in-and-out" purchaser.

In fact, the cases cited by Alexander—none of which are cited to support his "in-and-out" purchaser argument—actually support this conclusion, as they only involve "day traders" whose trading was "unusually active" or "frantic" throughout the class period. *See Applestein v. Medivation Inc*, C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *9-10 (N.D. Cal. Sept. 20, 2010) ("The transaction history that Schindler submitted to support his motion to be appointed lead plaintiff indicates that he engaged in **407 trades of Medivation stock over a 644 day period** within the class period. Those records also show that the volume of his trading ranged from a **single trade to as many as 44 trades in a single day**.") (emphasis added); *see also Eichenholtz v. Verifone Holdings, Inc.*, C07-06140MHP, 2008 U.S. Dist. LEXIS 64633, at *35 (N.D. Cal. Aug. 22, 2008) ("It is therefore not surprising that CLAL Finance made **an average of nineteen trades a day** in Verifone shares **for the entirety of the nine months**.") (emphasis added); *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *17-18 ("A review of Robert McCullough, Jr.'s trading history reveals that he was **unusually active**, making **as many as 80 separate transactions of Syntax–Brillian stock in a single day**.") (emphasis added). Moreover, the *Tsirekidze* Court expressly noted that "day traders are not ipso facto disqualified from the lead plaintiff role," but nevertheless disqualified a lead plaintiff movant because of his "frantic

trading" *and* because the lead plaintiff movant had previously submitted his certification to the wrong law firm "in error." *Id.*, at *17-18 ("Such a blatant gaffe does not bode well for the adequacy of his group to lead this litigation.").[4]

Alexander's own argument that Mr. Bratter "purchased and sold 60,000 shares of Molycorp stock in **12 separate 'day trades'**" during a 246-day Class Period itself constitutes dramatic evidence that Mr. Bratter is not a "day trader" by any stretch. Alexander Opp. at 14, n.11 (emphasis added). In truth, there are 246 days in the Class Period, Mr. Bratter purchased shares on just 15 days during the Class Period and sold on even fewer days—certainly not the "frantic trading" or the "unusually active" trading discussed in Alexander's case law. Mr. Bratter is not a day trader.

### b. Alexander's "Day Trader" And "In-And-Out" Purchaser Argument Is Not Legally Tenable

Not only does Alexander offer no proof that Mr. Bratter relied on market volatility instead of market integrity, his basic premise is also untenable: many courts have expressly rejected the "day trader" and "in-and-out" purchaser argument being advanced by Alexander as legally deficient. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 354-55 (D. Md. 2003) (citing *In re Oxford Health Plans, Inc. Sec. Litig.,* 199 F.R.D. 119, 124 (S.D.N.Y.2001) ("It has been suggested that Generic is atypical because it is a day-trader, and

---

[4] Alexander purports to rely on *In re Safeguard Scientifics,* 216 F.R.D. 577, 583 (E.D. Pa. 2003), for the proposition that "day traders" are precluded from serving as class representatives because they are subject to unique defenses. Alexander Opp. at 11. Alexander ignores a critical statement made by the proposed representative in *Safeguard* raising questions of reliance and materiality, to wit: "When I purchased the stock I wasn't concerned, aware, cared or anything about or was even aware what [defendant] Mr. Musser was doing and I wasn't focusing on it." *Id*. at 583. The *Safeguard Scientifics* court found that the proposed representative was precluded from serving as class representative because he would be subjected to serious issues of materiality and reliance by the defendants. *Id*. Thus, *Safeguard* is not persuasive and has no application to this matter.

8

day-traders allegedly do not rely on the financial statements or the fundamental value of a company as the rest of the market does. But where false information and misleading omissions pollute the market, all types of investors are injured.")); *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 108 (S.D.N.Y.2004) ("[D]ay and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts."); *Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262, 268 (S.D.N.Y. 2009) (same) (citing *Montoya,* 2005 U.S. Dist. LEXIS 10224); *Pirelli Armstrong Tire Corp.,* 229 F.R.D. at 415 (simply being a day trader or in-and-out trader does "not suffice to establish that [day trading plaintiff] [was] subject to a unique defense"); *Freudenberg v. E\*Trade Fin. Corp.*, CIV A 07 CIV. 8538, 2008 U.S. Dist. LEXIS 62767, at \*20-21 (S.D.N.Y. July 16, 2008) (citing *In re Gaming Lottery Sec. Litig.,* 58 F.Supp.2d 62, 69-71 (S.D.N.Y.1999) (rejecting defendants' argument that an in-and-out purchaser was an inadequate class representative because he sold as well as purchased at inflated prices)).

Accordingly, even if the Court finds Mr. Bratter was a "day trader" or an "in-and-out" purchaser, he still has the largest loss and the largest *Dura* loss of any otherwise adequate movant, and thus, he still has the same incentive to prove Defendants' liability as all other class members—whether or not he engaged in day trading. *See Prefontaine v. Research in Motion Ltd.*, 2012 U.S. Dist. LEXIS 4238, at \*13 (S.D.N.Y. Jan. 5, 2012); s*ee also Pirelli Armstrong Tire Corp.,* 229 F.R.D. at 415; *Andrada v. Atherogenics, Inc*., 05 CIV. 00061 (RJH), 2005 U.S. Dist. LEXIS 6777, at \*17, n.2 (S.D.N.Y. Apr. 19, 2005) ("To the extent that South Ferry attacks May and Michelle Fortunato of the Billings Group as "day traders" and therefore atypical of the class, the Court notes that South Ferry has failed to identify any substantive concerns that would

undermine either plaintiff's ability to represent the class."). Therefore, no competing movant has rebutted Mr. Bratter's "most adequate plaintiff" presumption and Mr. Bratter's motion should be granted.

## CONCLUSION

Mr. Bratter respectfully requests that this Court grant his motion to serve as Lead Plaintiff, approve his selection of Counsel and deny all competing motions.

Dated: May 8, 2012                     /s/ Kip B. Shuman
                                                         Kip B. Shuman
Rusty E. Glenn
**THE SHUMAN LAW FIRM**
885 Arapahoe Ave.
Boulder, CO 80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886
Email: kip@shumanlawfirm.com
Email: rusty@shumanlawfirm.com

*Proposed Liaison Counsel for the Class*

Kim E. Miller
**KAHN SWICK & FOTI, LLC**
500 Fifth Avenue, Ste. 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

-and-

Lewis S. Kahn
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Attorneys for Gordon Bratter and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing was filed on May 8, 2012, through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

                                    /s/ Kip Shuman
                                      Kip Shuman