**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 12-CV-00292-RM-KMT

In re MOLYCORP, INC. SECURITIES LITIGATION.

---

### ORDER

---

This uncertified securities fraud class action comes before the Court on Defendants Russ D. Ball ("Ball"); Ross R. Bhappu ("Bhappu"); Brian T. Dolan ("Dolan"); Mark Kristoff ("Kristoff"); Alec Machiels ("Machiels"); Charles R. Henry ("Henry"); Jack E. Thompson ("Thompson"); Mark A. Smith ("Smith"); James S. Allen ("Allen"); John F. Ashburn, Jr. ("Ashburn"); John L. Burba ("Burba"); J.P. Morgan Securities LLC ("J.P. Morgan"); Morgan Stanley & Co., LLC ("Morgan Stanley"); Knight Capital Americas, L.P. ("Knight"); Dahlman Rose & Company, LLC ("Dahlman"); Stifel, Nicolaus & Company, Inc. ("Stifel"); BNP Paribus Securities Corp. ("BNP"); CIBC World Markets Corp. ("CIBC"); Piper Jaffray & Co. ("Piper Jaffray"); and RBS Securities, Inc.'s ("RBS") (collectively, "Defendants") motion to dismiss (ECF No. 160) Plaintiffs'[1] first amended consolidated complaint ("FAC") (ECF No. 153). Defendants Craig M. Cogut ("Cogut"); Pegasus Capital Advisors, L.P. ("Pegasus"); T-II Holdings, LLC ("T-II Holdings"); and RCF Management, LLC ("RCF") (collectively, the "Investor Defendants") joined in Defendants' motion to dismiss (ECF No. 160) and also moved separately to dismiss (ECF No. 163) the FAC (ECF No. 153). The motions are fully briefed and ripe for adjudication. (ECF Nos. 164; 167; 168.)

---

[1] On May 29, 2012, the Court appointed certain lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 *et seq.* (ECF No. 49.)

Plaintiffs allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and United States Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.  Plaintiffs also allege violations of Sections 11, 12(a), and 15 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77k, 77l, and 77o.

The Court has subject matter jurisdiction pursuant to Section 27 of the 1934 Act, 15 U.S.C. § 78aa(a), and Section 22 of the 1933 Act, 15 U.S.C. § 77v(a), as well as pursuant to 28 U.S.C. § 1331.

For the reasons discussed below, the Court (i) GRANTS Investor Defendants' motion to dismiss (ECF No. 163); (ii) GRANTS, in part, Defendants' motion to dismiss (ECF No. 160); and (iii) DENIES, in part, Defendants' motion to dismiss (ECF No. 160).

## I.    BACKGROUND

Because this matter is before the Court on Defendants' and Investor Defendants' motions to dismiss, the Court accepts all well-pled facts, as distinguished from conclusory allegations, as true.  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1088 (10th Cir. 2003) (citation omitted). The Court also incorporates those facts of which it takes judicial notice pursuant to its prior order (ECF No. 149) and the parties' stipulation (ECF No. 160 at 16-17 n.18).

### A.    Overview[2]

Plaintiffs, a group of individuals who purchased shares of Molycorp, Inc.'s ("Molycorp" or "Company")[3] stock during the class period (February 7, 2011 through November 10, 2011)

---

[2] The Court previously dismissed Plaintiffs' consolidated complaint (ECF No. 60).  (ECF No. 150.)  The Court granted Plaintiffs leave to file an amended complaint (ECF No. 150 at 68) which is the FAC before the Court.
[3] The FAC originally named Molycorp as a Defendant.  (ECF No. 153 ¶¶ 24, 41.)  On June 25, 2015, Molycorp filed a suggestion of bankruptcy.  (ECF No. 161.)  Subsequently, Plaintiffs voluntarily dismissed its claims against Molycorp pursuant to Rule 41 of the Federal Rules of Civil Procedure.  (ECF No. 162.)  The Court notes that, within the Tenth Circuit Court of Appeals, there is ambiguity as to whether Rule 21 or Rule 41 applies to dismissal of a

("Class Period"), bring this action to recover damages sustained as a result of Defendants'

allegedly misleading statements regarding "rare earth elements" ("REEs") at Molycorp's mine

known as "Mountain Pass." (ECF No. 153 ¶¶ 1-3.) Plaintiffs allege that Defendants told

investors that (i) Molycorp's "principal" products included the heavy rare earth elements

("HREEs") dysprosium and terbium; and (ii) these elements were "contained . . . in [Molycorp's]

deposit at Mountain Pass." (ECF No. 153 ¶ 3.) Defendants informed investors that during its

development of Mountain Pass (a project known as "Project Phoenix"), its principal products,

dysprosium and terbium, were present in the ore deposit at Mountain Pass. (ECF No. 153 ¶ 72.)

Plaintiffs allege that there were no HREEs at Mountain Pass[4] and that Defendants knew

of this fact. (ECF No. 153 ¶¶ 68-118; *see also* ECF No. 153 ¶¶ 147-158.) Plaintiffs rely upon a

former Molycorp "analytical chemist" and a former Molycorp "operator" to form the basis for

these allegations. (ECF No. 153 ¶¶ 76-83.) Plaintiffs allege that Defendants made these

misleading statements to inflate Molycorp's stock prices to allow insider-selling Defendants to

sell large portions of their shares in Molycorp. (ECF No. 153 ¶¶ 84-91.)

Plaintiffs allege that between November 8, 2011 and November 10, 2011, information

regarding the true nature of Mountain Pass's HREE ore composition became available to the

market and, as a result, Molycorp's stock dropped and Plaintiffs were harmed. (ECF No. 153 ¶¶

110-118.)

---

party from an action involving more than one defendant. *See Van Leeuwen v. Bank of Am., N.A.*, 304 F.R.D. 691, 692-97 (D. Utah 2015). Regardless, Molycorp is no longer before the Court.

[4] Plaintiffs vacillate between alleging that there were "virtually no HREEs" (ECF No. 153 ¶¶ 4, 75, 81) and "no HREEs" (ECF No. 153 ¶ 77) at Mountain Pass. This vacillation may become significant at a later procedural posture because if Defendants merely informed investors that HREEs were present in the Mountain Pass ore, any amount of HREEs present in the ore body may defeat a claim that Defendants materially misrepresented the composition of the ore body, *i.e.*, that it contained HREEs. Specifically, the claim that Mountain Pass contains "*virtually* no HREEs" (ECF No. 153 ¶ 81 (emphasis added)) is vague and therefore, is not actionable. *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1339 (10th Cir. 2012) (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)).

B.     **The Parties and the Claims**

Plaintiffs bring this action on behalf of all purchasers or acquirers of Molycorp securities from February 7, 2011 through November 10, 2011, including all persons who purchased or acquired Molycorp common and preferred Stock on or about February 10, 2011 (hereinafter "February Offering") and all persons who purchased Molycorp common stock on or about June 15, 2011 (hereinafter "June Offering").  (ECF No. 153 ¶¶ 2, 41.)

Molycorp is a Colorado-based company (ECF No. 153 ¶ 24) whose core business is the mining, production, and sale of rare earth elements (ECF No. 153 ¶ 24).  Prior to Molycorp's 2010 formation, Molycorp's predecessor and current subsidiary, Molycorp Minerals, LLC ("Molycorp Minerals"), owned and operated Mountain Pass.  (ECF No. 153 ¶ 24.)

1934 Act Defendants include certain Molycorp executive officers and/or directors[5] (ECF No. 153 ¶¶ 25, 27, 28, 30, 31, 34, 36, 38, 39) as well as certain Molycorp private equity investors[6] (ECF No. 153 ¶¶ 32, 33, 35, 37).

1933 Act Defendants include certain Molycorp executive officers and/or directors[7] (ECF No. 153 ¶¶ 42-52) and various securities underwriters[8] (ECF No. 153 ¶¶ 53-61).

Plaintiffs generally allege that Smith, Allen, Ashburn, Ball, Bhappu, Burba, Dolan, Kristoff, Machiels, Henry, and Thompson were senior officers or directors of Molycorp; each of them had access to the materially adverse, undisclosed information; each of them directly participated in the management of Molycorp; each was directly involved in the day-to-day

---

[5] Smith (Chief Executive Officer, President, and Director); Allen (Chief Financial Officer and Treasurer); Ashburn (Executive Vice President and General Counsel); Bhappu (Chairman of the Board of Directors); Burba (Executive Vice President and Chief Technology Officer); Dolan (Director); Kristoff (Director); Henry (Director); and Thompson (Director).

[6] Cogut; Pegasus; RCF; and T-II Holdings.

[7] Smith; Allen; Ashburn; Ball (Director); Bhappu; Burba; Dolan; Kristoff; Machiels (Director); Henry; and Thompson.

[8] Morgan Stanley; J.P. Morgan; Knight; Dahlman; Stifel; BNP; CIBC; Piper Jaffray; and RBS.

operations of Molycorp; and each was involved in signing and/or disseminating the information in SEC forms and press releases.  (ECF No. 153 ¶¶ 25-28, 30-31, 34, 36, 38-39, 42-52, 92-109.)

Plaintiffs allege Cogut exercised control over Pegasus and T-II Holdings.  (ECF No. 153 ¶ 32.)  Plaintiffs allege Pegasus controlled Molycorp Minerals—the entity that was formed to acquire Mountain Pass.  (ECF No. 153 ¶ 32.)  Plaintiffs allege Cogut engaged in insider trading[9] in violation of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.  (ECF No. 153 ¶ 32.)  Plaintiffs allege Defendants Pegasus and T-II Holdings engaged in insider trading in violation of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.  (ECF No. 153 ¶¶ 33, 37.)  Plaintiffs allege RCF engaged in insider trading in violation of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.  (ECF No. 153 ¶ 35.)

Plaintiffs allege Morgan Stanley, J.P. Morgan, Knight, Dahlman, Stifel, BNP, CIBC, Piper Jaffray, and RBS (collectively, "Underwriter Defendants"), were engaged as underwriters for the February and June Offerings.  (ECF No. 153 ¶¶ 53-62.)  Plaintiffs allege the Underwriter Defendants failed to perform adequate due diligence and/or did not possess reasonable grounds for the belief that the statements contained in and/or incorporated in the February and June offering documents did not misrepresent and omit material facts.  (ECF No. 153 ¶¶ 53-62.)

### C.  Alleged Material Misrepresentations and Omissions

Plaintiffs' securities claims focus upon two misrepresentations:  statements related to Mountain Pass's ore composition (ECF No. 153 ¶¶ 93-109) and statements related to Molycorp's principal products (ECF No. 153 ¶¶ 93-109).

---

[9] The Court notes that previously, Plaintiffs pled their "insider trading" violations pursuant to Section 20A of the 1934 Act, 15 U.S.C. § 78t-1.  (ECF No. 60 ¶¶ 188-265.)  In the FAC, Plaintiffs do not claim relief under this statutory section against any Defendant.  (*See generally* ECF No. 153.)

1.    <u>February 2011 Statements Related to Molycorp's February Offering</u>

On February 7, 2011, Molycorp filed the February 2011 Form S-1/A with the SEC in connection with the February Offering. (ECF No. 153 ¶ 93.) Defendants Smith, Allen, Ball, Bhappu, Dolan, Kristoff, Machiels, Henry, and Thompson signed the February 2011 Form S-1/A. (ECF No. 153 ¶ 93.) The February 2011 Form S-1/A for the February Offering allegedly contained materially false and misleading statements. (ECF No. 153 ¶ 93.) Plaintiffs allege that the February 2011 Form S-1/A contained the following materially false and misleading statements: (i) "heavy REEs are contained in . . . our deposit at Mountain Pass"; and (ii) "[o]ur principal products[] includ[e] . . . dysprosium [] and terbium." (ECF No. 153 ¶ 93.)

On February 11, 2011, Molycorp filed the February 2011 Form S-1MEF with the SEC for the purpose of adding shares of preferred stock to the February Offering. (ECF No. 153 ¶ 95.) The February 2011 Form S-1MEF incorporated by reference all statements contained in Molycorp's February 2011 Form S-1/A. (ECF No. 153 ¶ 95.) Defendants Smith, Allen, Ball, Bhappu, Dolan, Kristoff, Machiels, Henry, and Thompson signed the February 2011 Form S-1MEF. (ECF No. 153 ¶ 95.)

On February 14, 2011, Molycorp filed a prospectus with the SEC in connection with the February Offering. (ECF No. 153 ¶ 96.) The February prospectus contained the same statements in the February 2011 Form S-1/A. (ECF No. 153 ¶ 96.)

Plaintiffs allege that these statements are false, misleading, and omitted material facts based on the following:

(a)    daily analysis of 20 to 30 samples of Mountain Pass ore body, between 2008 and throughout 2011, showed no dysprosium or terbium in Mountain Pass ore and this information was kept in a Laboratory Information Management System ("LIMS") system to which certain

6

Molycorp executives had access and was part of their job responsibilities (ECF No. 153 ¶¶ 25-28, 31, 79, 109(a));

(b)     investigations of float tests of Mountain Pass ore body failed to identify any significant quantities of HREEs at Mountain Pass (ECF No. 153 ¶¶ 77, 109(a));

(c)     between 2008 and throughout 2011, Mountain Pass never produced any HREEs (ECF No. 153 ¶¶ 80, 109(b)).

2.     <u>Molycorp's 2010 Form 10-K</u>

On March 9, 2011, Molycorp filed its 2010 Form 10-K with the SEC.  (ECF No. 153 ¶ 99.)  Defendants Smith, Allen, Bhappu, Dolan, Henry, Kristoff, Machiels, and Thompson signed the 2010 Form 10-K.  (ECF No. 153 ¶ 99.)  The 2010 Form 10-K allegedly contained the same materially false and misleading statements as in the February 2011 Form S-1/A.  (ECF No. 153 ¶ 99.)

Plaintiffs allege that these statements are false, misleading, and omitted material facts based on the following:

(a)     daily analysis of 20 to 30 samples of Mountain Pass ore body, between 2008 and throughout 2011, showed no dysprosium or terbium in Mountain Pass ore and this information was kept in a LIMS system to which certain Molycorp executives had access and was part of their job responsibilities (ECF No. 153 ¶¶ 25-28, 31, 79, 109(a));

(b)     investigations of float tests of Mountain Pass ore body failed to identify any significant quantities of HREEs at Mountain Pass (ECF No. 153 ¶¶ 77, 109(a));

(c)     between 2008 and throughout 2011, Mountain Pass never produced any HREEs (ECF No. 153 ¶¶ 80, 109(b)).

3.      Molycorp's 1Q11 Form 10-Q

On May 10, 2011, Molycorp filed with the SEC its 1Q11 Form 10-Q.  (ECF No. 153 ¶

102.)  Defendants Smith and Allen signed the 1Q11 Form 10-Q.  (ECF No. 153 ¶ 102.)  The

1Q11 Form contained the allegedly false and misleading statement:  "Our principal products[]

includ[e] . . . dysprosium[] and terbium. . . ."  (ECF No. 153 ¶ 102.)

Plaintiffs allege that these statements are false, misleading, and omitted material facts

based on the following:

(a)      daily analysis of 20 to 30 samples of Mountain Pass ore body, between 2008 and

throughout 2011, showed no dysprosium or terbium in Mountain Pass ore and this information

was kept in a LIMS system to which certain Molycorp executives had access and was part of

their job responsibilities (ECF No. 153 ¶¶ 25-28, 31, 79, 109(a));

(b)      investigations of float tests of Mountain Pass ore body failed to identify any

significant quantities of HREEs at Mountain Pass (ECF No. 153 ¶¶ 77, 109(a));

(c)      between 2008 and throughout 2011, Mountain Pass never produced any HREEs

(ECF No. 153 ¶¶ 80, 109(b)).

4.      Molycorp's June 2011 Secondary Offering

On June 7 and 10, 2011, Molycorp filed with the SEC the June 2011 Registration

Statement and the June 2011 Prospectus, respectively, in connection with the June Offering of

11.5 million shares of common stock.  (ECF No. 153 ¶ 104.)  Defendants Smith, Allen, Ashburn,

Ball, Bhappu, Dolan, Kristoff, Machiels, Henry, and Thompson signed the June 2011

Registration Statement.  (ECF No. 153 ¶ 104.)  The June 2011 offering documents for the June

Offering, in pertinent part, contained the following false and misleading statements:  (i) "heavy

REEs are contained in . . . our deposit at Mountain Pass"; and (ii) "[o]ur principal products[] includ[e] . . . dysprosium [] and terbium."  (ECF No. 153 ¶ 104.)

Plaintiffs allege that these statements are false, misleading, and omitted material facts based on the following:

(a)      daily analysis of 20 to 30 samples of Mountain Pass ore body, between 2008 and throughout 2011, showed no dysprosium or terbium in Mountain Pass ore and this information was kept in a LIMS system to which certain Molycorp executives had access and was part of their job responsibilities (ECF No. 153 ¶¶ 25-28, 31, 79, 109(a));

(b)      investigations of float tests of Mountain Pass ore body failed to identify any significant quantities of HREEs at Mountain Pass (ECF No. 153 ¶¶ 77, 109(a));

(c)      between 2008 and throughout 2011, Mountain Pass never produced any HREEs (ECF No. 153 ¶¶ 80, 109(b)).

5.      Molycorp's 2Q11 Form 10-Q

On August 11, 2011, Molycorp filed with the SEC its 2Q11 Form 10-Q.  (ECF No. 153 ¶ 107.)  Defendants Smith and Allen signed the 2Q11 Form 10-Q.  (ECF No. 153 ¶ 107.)  The 2Q11 Form 10-Q contained the following false and misleading statements:  (i) "heavy REEs are contained in . . . our deposit at Mountain Pass"; and (ii) "[o]ur principal products[] includ[e] . . . dysprosium [] and terbium."  (ECF No. 153 ¶ 107.)

Plaintiffs allege that these statements are false, misleading, and omitted material facts based on the following:

(a)      daily analysis of 20 to 30 samples of Mountain Pass ore body, between 2008 and throughout 2011, showed no dysprosium or terbium in Mountain Pass ore and this information

was kept in a LIMS system to which certain Molycorp executives had access and was part of their job responsibilities (ECF No. 153 ¶¶ 25-28, 31, 79, 109(a));

    (b)    investigations of float tests of Mountain Pass ore body failed to identify any significant quantities of HREEs at Mountain Pass (ECF No. 153 ¶¶ 77, 109(a));

    (c)    between 2008 and throughout 2011, Mountain Pass never produced any HREEs (ECF No. 153 ¶¶ 80, 109(b)).

### D.    Loss Causation

Between November 8 and November 10, 2011, Plaintiffs allege that news began entering the market that Molycorp had not found any quantities of HREEs in the Mountain Pass ore body. (ECF No. 153 ¶ 110.)  Plaintiffs allege that on November 10, 2011, Molycorp had a 3Q11 earnings conference call during which Smith stated that the furthest Molycorp had come toward actually identifying HREEs at Mountain Pass was its construction of a "cracking facility" (in order to separate HREEs).  (ECF No. 153 ¶ 111.)  The price of Molycorp's common stock dropped from a closing price of $42.29 per share on November 8, 2011 to a closing price of $33.45 per share on November 11, 2011.  (ECF No. 153 ¶ 112.)  The price of Molycorp's preferred stock dropped from a November 8, 2011 closing price of $80.04 per share to a closing price of $69.92 per share on November 11, 2011.  (ECF No. 153 ¶ 112.)

## II.    LEGAL STANDARDS

### A.    General Pleading Standards under Rule 8

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

      "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do. . . ." *Twombly*, 550 U.S. at 555 (citations omitted).  "Factual

allegations must be enough to raise a right to relief above the speculative level." *Id*.  A "plaintiff

must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a

motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove

*some* set of facts in support of the pleaded claims is insufficient; the complaint must give the

court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support

for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.

2007) (emphasis in original, internal citation and quotation omitted).

      The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope

of the allegations in a complaint:  if they are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims

across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d

1188, 1191 (10th Cir. 2012) (internal quotation and citation omitted).  The Tenth Circuit has

further noted "that the nature and specificity of the allegations required to state a plausible claim

will vary based on context." *Id*.  (Internal quotation and citation omitted.)  Thus, the Tenth

Circuit "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact

pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme C]ourt stated will not do.'"  *Id*. (Citation omitted.)

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in a plaintiff's favor.  *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998) (citation omitted); *Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996) (citations omitted).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions. . . .'" *Khalik*, 671 F.3d at 1190 (quoting *Iqbal*, 556 U.S. at 678).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  *Id*.

**B.      Pleading Standards under the Private Securities Litigation Reform Act**

Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to "state with particularity the circumstances constituting the fraud or mistake."  Fed. R. Civ. P. 9(b).  "Generally, the [Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 *et seq*.] is seen as imposing a standard of pleading which is more strict than that of Rule 9(b)."  *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1188 (D. Colo. 2004) (citing *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001)).

Under Section 10(b) of the 1934 Act, it is unlawful for any person "[t]o use or employ in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  15

U.S.C. § 78j(b).  SEC Rule 10b-5 provides that it is unlawful for any person

(a)     To employ any device, scheme, or artifice to defraud,

(b)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege that a defendant (1) in connection with the purchase or sale of a security; (2) made an untrue statement of material fact or failed to state a material fact; (3) with scienter; (4) that plaintiff relied on the misrepresentation; (5) that the plaintiff suffered an economic loss; and (6) that the material misrepresentation was the cause of that loss.  *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1136 (10th Cir. 2009) (citation omitted); *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1139 (D. Colo. 2011) (internal quotations omitted) (citing *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1225 (10th Cir. 1996)).

As the Tenth Circuit has held, the PSLRA is intended to stem abuses in private securities fraud suits.  *Fleming*, 264 F.3d at 1258-59 (citation omitted).  In addition, the PSLRA is meant to "protect[] outside directors, and others who may be sued for non-knowing securities law violations, from liability for damage actually caused by others."  H.R. Conf. Rep. No. 104-369, at 32, 1995 WL 709276, at *32 (Nov. 28, 1995).  The PSLRA, which amended the 1933 Act and the 1934 Act, "imposed specific and more stringent pleading requirements on complaints alleging securities fraud under Section 10(b)."  *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d at 1139 (citations omitted).  The PSLRA provides:

(b)     Requirements for securities fraud actions

(1)     Misleading statements and omissions.  In any private action arising under this chapter in which the plaintiff alleges that the defendant –

(A)     made an untrue statement of a material fact; or

(B)     omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2)     Required state of mind.

(A)     In general . . . [i]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C.A. § 78u-4(b)(1) and (2) (West 2014).  To satisfy the PSLRA's pleading requirement for a 1934 Act claim, plaintiffs must specify (1) each statement alleged to have been misleading; (2) why the statement is misleading; and (3) regarding each act or omission, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.  *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012); *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d at 1140 (citation omitted).

When a complaint contains allegations made on "information and belief," the PSLRA requires that "the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).  Allegations based upon "investigation of counsel" are treated as if made on "information and belief."  *Adams*, 340 F.3d at 1098.  When a complaint contains allegations based on investigation of counsel, (*see* ECF No. 153 ¶ 1), the PSLRA "requires a plaintiff to identify in the complaint specific facts that support the allegations about the

misleading nature of the defendant's statements.  Generalized or conclusory allegations of fraud will not be sufficient." *Adams*, 340 F.3d at 1098.  The Tenth Circuit has held that this provision of the PSLRA does not require plaintiffs to include "all" facts on which their beliefs concerning false or misleading statements are based.  *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d at 1140 (citations omitted).  Rather, the Tenth Circuit evaluates "the facts alleged in a complaint to determine whether, taken as a whole, they support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Adams*, 340 F.3d at 1099 (citation omitted).  The Tenth Circuit's approach involves an evaluation of the following "*Adams*" factors:

> (1)     the level of detail provided by the facts stated in a complaint;
>
> (2)     the number of facts provided;
>
> (3)     the coherence and plausibility of the facts when considered together;
>
> (4)     whether the source of the plaintiff's knowledge about a stated fact is disclosed;
>
> (5)     the reliability of the sources from which the facts were obtained; and
>
> (6)     any other indicia of how strongly the facts support the conclusion that a reasonable person would believe that the defendant's statements were misleading.

*Adams*, 340 F.3d at 1099 (citation omitted).  "If an analysis of these factors leads to the conclusion that a reasonable person would find the defendant's statements to be false or misleading, 'the plaintiff has sufficiently pled with particularity facts supporting his belief in the misleading nature of the defendant's statements.'" *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d at 1140 (quoting *Adams*, 340 F.3d at 1099).  Whether the source of the plaintiff's knowledge is disclosed "can significantly strengthen the [] pleading," but a plaintiff's complaint need not "always identify the source, either personal or documentary of the facts alleged." *In re Crocs,*

*Inc. Sec. Litig.*, 774 F. Supp. 2d at 1140 (alteration in original) (quoting *Adams*, 340 F.3d at 1101-02).

## III.   ANALYSIS

Plaintiffs bring their principal claims pursuant to Section 10(b) of the 1934 Act and Section 11 of the 1933 Act.  With respect to the Section 10(b) claim, the parties dispute the sufficiency of Plaintiffs' pleading as to three of the elements required to state a claim:  (1) material misrepresentation or omission, including whether certain alleged misrepresentations are inactionable under the PSLRA's "safe harbor" provision[10], whether certain Defendants even made the statements alleged to be misrepresentations, and whether the inside information allegedly possessed by Investor Defendants motivated their decision to sell their shares contemporaneously with Plaintiffs; (2) scienter; and (3) loss causation.  With respect to the Section 11 claim, the parties dispute the sufficiency of Plaintiffs' pleading as to whether:  (1) Plaintiffs adequately pled a misrepresentation; and (2) Plaintiffs' claim sounds in fraud or negligence.

With respect to Plaintiffs' other claims under Section 20(a) of the 1934 Act as well as Sections 12 and 15 of the 1933 Act, the Court's resolution as to whether there has been an adequately pled predicate violation of the respective securities laws under Section 10(b) of the

---

[10] Defendants raise an objection "to the extent Plaintiffs are challenging forward-looking statements concerning Molycorp's future production of HREEs, including dysprosium and terbium."  (ECF No. 160 at 7 n.11.)  The Court finds this argument (for the purpose of considering Defendants' motion to dismiss) waived because it is raised in a perfunctory manner, *i.e.*, a single sentence in a footnote in the opening brief.  *See In re Taylor*, 737 F.3d 670, 682 n.9 (10th Cir. 2013); *United States v. Berry*, 717 F.3d 823, 834 n.7 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 495 (2013).  Defendants pursue this argument more vigorously in their reply brief (ECF No. 167 at 9-10) but Defendants cannot raise new arguments in a reply brief.  *See Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (internal quotation and citations omitted).  "When a party puts forth new arguments in a reply brief, a court may avoid error by either:  (1) choosing not to rely on the new arguments in determining the outcome of the motion; or (2) permitting the nonmoving party to file a surreply."  *E.E.O.C. v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1260 (D. Colo. 2007) (citing *Pippin*, 440 F.3d at 1192).  In reaching its holdings, the Court chooses not to rely on Defendants more fully articulated argument in its reply brief that the complained-of-statements are forward-looking.

1934 Act and Section 11 of the 1933 Act—in this matter, is determinative for whether Plaintiffs have sufficiently pled the secondary claims.

### A.   1934 Act Claims

1.   <u>Section 10(b) and Rule 10b-5 Claim</u>[11]

a.   *Alleged Material Misrepresentations or Omissions*

A representation or omission is only material "'if a reasonable investor would consider it important in determining whether to buy or sell stock,' and if it would have 'significantly altered the total mix of information available' to current and potential investors." *Fleming*, 264 F.3d at 1265 (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)).  The Tenth Circuit has distinguished "between statements that are material and those that are 'mere [puffery] . . . [or] not capable of objective verification." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d at 1339 (quoting *Grossman*, 120 F.3d at 1119).  "Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions." *Id.* (internal quotation marks and citation omitted).

For the reasons stated below, under *Adams*, the Court finds that Plaintiffs adequately pled, with the requisite specificity, a material misrepresentation or omission.  Thus, Plaintiffs adequately pled a Section 10(b) and Rule 10b-5 claim against certain of the 1934 Act Defendants.

(1)   Statements Concerning the Presence of HREEs in Mountain Pass

Plaintiffs claim that the 1934 Act Defendants' statements concerning the presence of HREEs in Mountain Pass were misleading because such statements depended upon the presence HREEs when, as the FAC alleges, none existed.  (ECF No. 153 ¶¶ 72, 75, 77, 80-82, 92-96, 99,

---

[11] Plaintiffs' Section 10(b) and Rule 10b-5 claim is against Defendants Smith, Allen, Ashburn, Bhappu, Burba, Cogut, Pegasus, Dolan, RCF, Kristoff, T-II Holdings, Henry, and Thompson.  (ECF No. 153 ¶¶ 132-42.)

104, 109, 132-42.)   Because Plaintiffs rely upon a singular basis (the ore composition) for their assertions as to this material misrepresentation, the Court proceeds by analyzing whether this basis is sufficiently pled in accordance with *Adams*, 340 F.3d at 1099.   As the Court finds, in part, the supporting allegations well pled, the Court finds well pled Plaintiffs' allegations concerning misrepresentations or omissions about the presence of HREEs in Mountain Pass.

i.      **Ore Composition** (*See* ECF No. 153 ¶¶ 76-83).

Plaintiffs allege that between 2008 and 2012, daily analysis of Mountain Pass ore revealed there were no HREEs—including dysprosium and terbium—at Mountain Pass.  (ECF No. 153 ¶ 77.)  Plaintiffs further allege that "float tests of the Mountain Pass ore body" conducted between 2008 and 2012, confirmed the "virtual absence of HREEs at Mountain Pass." (ECF No. 153 ¶ 77.)  Plaintiffs allege that the "data output of the daily testing of 20 to 30 samples of Mountain Pass ore between 2008 and 2012 was recorded in notebooks and entered into the computerized LIMS system operated by Molycorp Minerals and Molycorp."  (ECF No. 153 ¶ 78.)  LIMS systems are "designed to communicate data regarding ore testing between the laboratory and key business decision makers."  (ECF No. 153 ¶ 79.)  Plaintiffs allege that Allen "held himself out as knowledgeable about [Molycorp's] operating and financial condition, including the capabilities of Mountain Pass."  (ECF No. 153 ¶ 27.)  Plaintiffs allege that certain Molycorp executives had access to the LIMS system.  (ECF No. 153 ¶¶ 25, 27, 28, 31.)

Plaintiffs' basis for these allegations is a former Molycorp "analytical chemist" ("CW1") and "operator" ("CW2").  (ECF No. 153 ¶¶ 76-77, 80.)  Plaintiffs allege that Molycorp (and its subsidiary Molycorp Minerals) employed the analytical chemist during ore-testing periods. (ECF No. 153 ¶¶ 76-77.)  Plaintiffs allege that ore tests were conducted and that the purpose of these tests was to identify the presence of HREEs.  (ECF No. 153 ¶ 77.)  Plaintiffs allege that

Molycorp executives could understand these scientific test results.  (ECF No. 153 ¶¶ 79, 25-28, 31.)  Plaintiffs allege that certain Molycorp executives—Smith and Allen—had knowledge about Molycorp's operating and financial condition, including, specifically, the characteristics of the ore body at Mountain Pass (*see* ECF No. 153 ¶¶ 26-27).  Plaintiffs allege that Mountain Pass "operations" were connected to the ore test or extraction results.  (ECF No. 153 ¶¶ 79, 26-27.)

Defendants argue that the allegations predicated upon the CW1 are not sufficient because it is not clear whether the HREEs were concentrated "in a particular area of the ore body."  (ECF No. 160 at 10.)  At this stage in the litigation, Defendants argument is not convincing as Plaintiffs allege that the purpose of these tests was to identify the presence of HREEs in the Mountain Pass ore.  (ECF No. 153 ¶ 77.)[12]

Plaintiffs allege that the allegations based upon the analytical chemist's knowledge are corroborated by a former Molycorp operator.  (ECF No. 153 ¶ 80.)  Plaintiffs allege that Molycorp Minerals and Molycorp formerly employed this operator between 2008 and 2010 as well as between 2010 and 2012, respectively.  (ECF No. 153 ¶ 80.)  This operator worked at Mountain Pass and was responsible for operating machinery that produced REE products from the ore retrieved from Mountain Pass between 2008 and 2012.  (ECF No. 153 ¶ 80.)  Without supporting facts, Plaintiffs allege that this operator "learned that Mountain Pass had been unable to produce HREEs for decades."  (ECF No. 153 ¶ 80.)  Plaintiffs allege that throughout "CW2's employment with Molycorp Minerals and Molycorp, Mountain Pass never produced HREEs."  (ECF No. 153 ¶ 80.)  The Court finds that Plaintiffs have failed to allege how the operator has

---

[12] Although the Court previously declined to take judicial notice of certain statements, the Court notes that Defendants previously requested the Court to take judicial notice of a March, 9, 2011 conference call (ECF No. 111 at 2 (citing Exhibit 27 (ECF No. 112-29, Ex. 27 [Mar. 9, 2011 Q4 2010 Conf. Call])) during which Defendant Smith made the following statement ". . . just remember that everywhere the ore body has all of the rare earth elements in it" (ECF No. 112-29 at 11).

knowledge of the contents of the ore.  Rather, the operator produced REE products which are not limited to HREE products.

Thus, the Court finds the ore testing allegations, in part, well pled.

(2)    Statements Concerning Molycorp's Principal Products

Plaintiffs claim that the 1934 Act Defendants' statements concerning Molycorp's principal products were misleading and omitted material information. (*See* ECF No. 153 ¶¶ 3, 81.)  Plaintiffs allege that statements concerning Molycorp's principal products were false because Molycorp was not producing dysprosium and terbium from its Mountain Pass mine. (ECF No. 153 ¶ 81.)  As the Court finds the supporting allegation well pled, the Court finds well pled Plaintiffs' allegations concerning misrepresentations or omissions about Molycorp's principal products.

i.    **March 9, 2011 Conference Call** (ECF No. 153 ¶ 81)

Specifically, Plaintiffs allege that during a Molycorp conference call, on March 9, 2011, Defendant Smith responded to a Jacobs Securities analyst who asked whether Molycorp *would be*[13] obtaining its dysprosium and terbium from a source other than the Mountain Pass deposit, to which Defendant Smith responded "[n]o."  (ECF No. 153 ¶ 81.)

Molycorp recommenced mining at Mountain Pass in 2010.  (ECF No. 112-14 at 11, Ex. 12 [Feb. 7, 2011 Form S-1 at Prospectus Summary].)  The complained of statement appears in Molycorp's offering document under the heading "Management's Discussion and Analysis of Financial Condition and Results" (ECF No. 112-14 at 87, Ex. 12 [Feb. 7, 2011 Form S-1 at 46]) and under the subheading "Quantitative and Qualitative Disclosures about Risk" (ECF No. 112-

---

[13] Again, the Court finds that Defendants failed to argue sufficiently that the March 9, 2011 conference call statements constituted protected forward-looking statements.

14 at 121, Ex. 12 [Feb. 7, 2011 Form S-1 at 65).  Plaintiffs have selectively cited the alleged

misrepresentation.  (ECF No. 153 ¶¶ 93, 102, 155.)  The full statement provides

> Our principal products, including cerium, lanthanum, praseodymium,
> neodymium, europium, samarium, gadolinium, dysprosium, and terbium, are
> commodities but are not traded on any commodity exchange.  As such, direct
> hedging of the prices for future production cannot be undertaken.

(ECF No. 112-14 at 121, Ex. 12 [Feb. 7, 2011 Form S-1 at 65].)

At this matter's procedural juncture, the Court is not inclined to resolve a factual dispute

concerning whether Molycorp intended to direct the statement to its principal products or to

identify those elements as commodities.  *See  Angres v. Smallworldwide PLC*, 94 F. Supp. 2d

1167, 1174 (D. Colo. 2000) (citation omitted).

Thus, the Court finds the March 9, 2011 conference call statement well pled[14].

### b.    *Scienter*

For a 1934 Act claim, the PSLRA requires that plaintiffs "state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind."  15

U.S.C. § 78u-4(b)(2).  The Supreme Court has held that "courts must consider the complaint in

its entirety . . . [in order to determine] whether *all* of the facts alleged, taken collectively, give

rise to a strong inference of scienter."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

322-23 (2007) (emphasis in original).

---

[14] The Court notes that whether a product is a company's "principal product" may be so vague as to be insufficient
to constitute an actionable statement.  *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d at 1339 (quoting
*Grossman*, 120 F.3d at 1119).  Further, in the prior complaint, Plaintiffs alleged that Molycorp's May 10 and August
11, 2011 Form 10-Qs stated that "[Molycorp] currently produce[s] rare earth metals outside of the United States
through a third-party tolling arrangement.  Additionally, through [Molycorp's] acquisitions of Molycorp Silmet AS
and MMA in April 2011, we added facilities and equipment for metal conversion and alloy production within the
Molycorp organization." (ECF No. 60 ¶¶ 121, 133.)  This allegation is absent from the FAC.  (*See generally* ECF
No. 153.)  Defendants previously asked the Court to take judicial notice of these statements.  (ECF No. 111 at 2.)
The Court granted Defendants' request.  (ECF No. 149 at 3 (*see* ECF No. 112-20 at 20, Ex. 18 [May 10, 2011 10-Q
at 18]; *see* ECF No. 112-25 at 26, Ex. 23 [Aug. 11, 2011 10-Q at 24].)  Plaintiffs' allegations focus on where
Molycorp "would be obtaining its dysprosium and terbium." (ECF No. 153 ¶ 81.)  Thus, a possible disconnect
exists between the current source of "principal products" and the future source of production such that what are
Molycorp's "principal products" may not be a material misrepresentation.

"The term 'scienter' has been defined by the Supreme Court of the United States as 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Fleming*, 264 F.3d at 1258 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). The Supreme Court has held that "[t]he words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct." *Ernst & Ernst*, 425 U.S. at 197 (citations omitted). Section 10(b)'s scienter requirement can also be satisfied by "[r]ecklesness, defined as 'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Fleming*, 264 F.3d at 1258 (quoting *Anixter*, 77 F.3d at 1232).

In order "to establish scienter in a securities fraud case alleging non-disclosure of potentially material facts, the plaintiff must demonstrate: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors." *Fleming*, 264 F.3d at 1261. The Tenth Circuit emphasized that "it is the danger of misleading buyers that must be actually known or so obvious that any reasonable man would be legally bound as knowing." *Fleming*, 264 F.3d at 1260-61 (emphasis in original; internal quotation and citation omitted).

Further, to determine whether or not a complaint's scienter allegations are sufficient to state a claim, the Court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314.

In considering the FAC in its entirety, the Court finds Plaintiffs sufficiently allege certain of the 1934 Act Defendants' scienter. That is, with respect to those 1934 Act Defendants who

are not the Investor Defendants, Plaintiffs' sufficiently allege those 1934 Act Defendants' scienter.

(1)     Confidential Witnesses

Courts are to treat with caution confidential witness statements as "a court has no way of knowing whether even named witnesses have axes to grind, are lying, and/or exist." *In re Thornburg Mortg., Inc. Sec. Litig.*, 824 F. Supp. 2d 1214, 1226 n.11 (D.N.M. 2011) (hereinafter "*Thornburg II*"). The Court evaluates the sufficiency of Plaintiffs' allegations by considering the details provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, and other similar indicia. *Sorkin, LLC v. Fisher Imaging Corp.*, Case No. Civ.A. 03-CV-00631-R, 2005 WL 1459735, at *6 (D. Colo. June 21, 2005) (citation omitted).

**i.    Analytical Chemist**

Plaintiffs' FAC relies upon a former Molycorp and Molycorp Minerals "analytical chemist," in part, for its allegations to ascribe the 1934 Act Defendants' scienter. Specifically, the FAC relies upon the "analytical chemist" with respect to Plaintiffs' allegations as to the ore testing samples (ECF No. 153 ¶¶ 76-78) and "float tests of the Mountain Pass ore body" (ECF No. 153 ¶ 77). Further, the FAC relies upon the analytical chemist to allege that the lab findings (ECF No. 153 ¶ 78) were recorded in Molycorp's LIMS system which was accessible by certain individuals within Molycorp's management. (ECF No. 153 ¶¶ 25, 27, 28, 31, 79.)

The FAC alleges Molycorp employed the analytical chemist between 2010 and 2012. (ECF No. 153 ¶ 77.) The FAC alleges Molycorp Minerals employed the analytical chemist between 2008 and 2010. (ECF No. 153 ¶ 77.) Plaintiffs allege that the analytical chemist was involved in daily analysis of Mountain Pass ore which was designed to measure amounts of

REEs.  (ECF No. 153 ¶ 77.)  Plaintiffs allege that data output of the daily testing were "recorded

in notebooks" and "entered into the computerized LIMS system operated by Molycorp Minerals

and Molycorp."  (ECF No. 153 ¶ 78.)  Plaintiffs allege that certain Molycorp executives—Smith

and Allen—had knowledge about the Company's operating and financial condition, including,

specifically, the characteristics of the ore body at Mountain Pass (ECF No. 153 ¶¶ 25-27) and a

"deep understanding of the operations at our Mountain Pass facility" (ECF No. 153 ¶ 26).

Plaintiffs allege that the daily testing of Mountain Pass ore was connected to Mountain Pass

operations.  (ECF No. 153 ¶ 79.)

With respect to the float tests, Plaintiffs allege that such tests are "a separation procedure

that relies on an element or mineral's gravimetric and/or magnetic characteristics" during which

lighter elements are separated from heavier elements.  (ECF No. 153 at 37 n.2.)

The Court finds the details provided by the analytical chemist, the basis of CW1's

knowledge, and the reliability of CW1 well pled.  For these reasons, the Court finds the

allegations based upon the analytical chemist well pled and thus, sufficient—in consideration of

the FAC in its entirety—to ascribe the 1934 Act non-Investor Defendants' scienter.

## ii.  Operator

Plaintiffs' FAC relies upon a former Molycorp and Molycorp Minerals "operator," in

part, for its allegations to ascribe the 1934 Act Defendants' scienter.  (ECF No. 153 ¶ 80.)

Specifically, the FAC relies upon the "operator" with respect to Plaintiffs' allegations as to the

presence of HREEs and production of HREEs.  (ECF No. 153 ¶ 80.)

The FAC alleges Molycorp employed the operator between 2010 and 2012.  (ECF No.

153 ¶ 80.)  The FAC alleges Molycorp Minerals employed the operator between 2008 and 2010.

(ECF No. 153 ¶ 80.)  Plaintiffs allege that the operator was responsible for "operating machinery

that produced REE products from the ore retrieved from Mountain Pass between 2008 and

2012." (ECF No. 153 ¶ 80.)  Further, in conclusory fashion, Plaintiffs allege that "[a]s a result of

[the operator's] work between 2008 and 2012, [the operator] learned that Mountain Pass had

been unable to produce HREEs for decades." (ECF No. 153 ¶ 80.)

It is not clear to the Court the basis for the allegation that the operator had knowledge of

Mountain Pass's past capability.  Further, it is not clear how operating machinery that produced

REE products from the ore retrieved from Mountain Pass necessarily implies that the individual

had an understanding of the ore composition and more specifically, the absence of HREEs.

For these reasons, the Court finds the allegations based upon the operator not well pled,

and thus, insufficient—in consideration of the FAC in its entirety—to ascribe the 1934 Act non-

Investor Defendants' scienter.

(2)    Stock Sales[15]

"To establish scienter by pleading motive and opportunity, the plaintiff ha[s] to allege

that the defendant benefitted from the alleged fraud in some concrete and personal way, 'as when

the defendants made material misrepresentations to maintain a high stock price and then sold

their own shares at a profit.'"  *In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d at 1194 (quoting

*Fleming*, 264 F.3d at 1261).  "In *Fleming*, [the Tenth Circuit] held that motive and opportunity

pleading, standing alone, is not sufficient to allege scienter under the PSLRA."  *In re Qwest

Commc'ns Int'l*, 396 F. Supp. 2d at 1194 (citing *Fleming*, 264 F.3d at 1263).  The *Fleming* court,

however, also held "that allegations concerning a defendant's motive and opportunity to commit

securities fraud may be considered in determining whether the 'plaintiffs' allegations taken as a

---

[15] The Court is cognizant that it is relying upon Investor Defendants' stock sales to ascribe scienter to the 1934 Act non-Investor Defendants.  As more fully discussed below (*see infra* Section III.A.1.d), there is nothing adequately pled to connect Investor Defendants to knowledge of the LIMS system.  Rather, it is the entirety of the FAC (including stock sales) that the Court finds the stock sales sufficient to establish scienter for the 1934 Act non-Investor Defendants.

whole, give rise to a strong inference of scienter.'" *In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d at 1194 (citing *Fleming*, 264 F.3d at 1263).

"Courts should not infer fraudulent intent based only on the fact that some officers sold stock. Rather, plaintiffs must allege that the trades *were made at times and in quantities that are suspicious* enough to support the necessary strong inference of scienter." *In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d at 1195 (emphasis added and citations omitted).

> Among the factors relevant to this inquiry are (i) whether the alleged trades were "normal and routine" for the insider; (ii) whether profits reaped "were substantial enough in relation to the compensation levels for any of the individual defendants so as to produce a suspicion that they might have had an incentive to commit fraud"; and (iii) whether, in light of the insider's total stock holdings, the sales are unusual or suspicious.

*In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d at 1195 (citation omitted). "For individual defendants' stock sales to raise an inference of scienter, plaintiffs must provide a meaningful trading history for purposes of comparison to the stock sales within the class period." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009) (citation omitted). "Plaintiffs are 'not excused from pleading the relevant [trading] history,' regardless of whether such history is available. *Prissert v. EMCORE Corp.*, 894 F. Supp. 2d 1361, 1373-74 (D.N.M. 2012) (internal quotation marks and citation omitted). "A 'meaningful trading history' requires information on non-[c]lass [p]eriod sales, the amount of stock retained by the [d]efendants, or . . . whether the amount of stock owned by the [d]efendants actually increased during the [c]lass [p]eriod." *Prissert*, 894 F. Supp. 2d at 1374 (internal quotation and citation omitted).

Plaintiffs allege a trading history sufficient to establish the 1934 Act Defendants' scienter because the Court is able to determine whether the trades were "normal and routine." Plaintiffs

allege that, prior to the Class Period, insider-selling Defendants[16] had an opportunity to sell their stock during Molycorp's 2010 initial public offering.  (*See* ECF No. 153 ¶ 89.)  Plaintiffs sufficiently allege that insider-selling Defendants' Class Period sales were out of line with their trading history subsequent to the Class Period.  Specifically, Plaintiffs allege that Smith sold 21% of his holdings during the Class Period while selling no common stock[17] between the end of the Class Period and the termination of his employment in December 2012.  (ECF No. 153 ¶¶ 86-87.)  Specifically, Plaintiffs allege Ashburn sold 34% of his holdings during the Class Period while selling no common stock between the end of the Class Period and the termination of his employment in March 2013.  (ECF No. 153 ¶¶ 86-87.)  Specifically, Plaintiffs allege RCF/Bhappu/Dolan sold 49.8% of their holdings during the Class Period while Bhappu and Dolan did not sell any common stock since June 2011.  (ECF No. 153 ¶¶ 86-87.)  Specifically, Plaintiffs allege Burba sold 34.7% of his holdings during the Class Period while selling no common stock between the end of the Class Period and the termination of his employment in March 2013.  (ECF No. 153 ¶¶ 86-87.)  Specifically, Plaintiffs allege Kristoff sold 52% of his holdings during the Class Period while selling no common stock since June 2011.  (ECF No. 153 ¶¶ 86-87.)   Specifically, Plaintiffs allege Henry sold 51.3% of his holdings during the Class Period while selling no common stock since June 2011.  (ECF No. 153 ¶¶ 86-87.)  Specifically, Plaintiffs allege Thompson sold 47.9% of his holdings during the Class Period while not selling any common stock since June 2011.  (ECF No. 153 ¶¶ 86-87.)

---

[16] Plaintiffs do not make any allegations with respect to Defendants T-II Holdings, Pegasus, and Cogut's post-Class Period sales.  (*See generally* ECF No. 153.)

[17] The Court recognizes a distinction between "total holdings" and "common stock."  (*See* ECF No. 153 ¶¶ 86-87.) Defendants, however, do not argue that such distinction is relevant to the Court's determination as to whether Plaintiffs adequately pled the relevant trading history.  (*See generally* ECF No. 153.)

Plaintiffs sufficiently pled insider-selling Defendants' trading history because the Court is able to discern that the insider-selling Defendants' Class Period actions were out of line with their trading practices.

The FAC alleges that insider-selling Defendants sold their shares within a price range of $50 to $51 per share.  (ECF No. 153 ¶ 90.)  Plaintiffs allege that Defendants' misleading statements caused Molycorp's stock to trade "at artificially inflated levels up to and above $70 per share during the Class Period."  (ECF No. 153 ¶¶ 97, 100, 103, 105, 108, 116.)

The FAC alleges insider-selling Defendants' reaped $1.4 billion in profits from their stock sales.  (ECF No. 153 ¶¶ 90-91.)  Plaintiffs do not make any allegations with respect to the insider-selling Defendants' compensation levels.  (*See generally* ECF No. 153.)

The profits, trading history, and trading volume (in light of the insider-selling Defendants' total stock holdings) appear suspicious under two prongs of the *Qwest* analysis.  *See* 396 F. Supp. 2d at 1195.

Thus, Plaintiffs' allegations regarding stock sales—in consideration of the FAC in its entirety—to ascribe the 1934 Act non-Investor Defendants' scienter are sufficient.

(3)     Position within the Company

"In *Fleming*, the Tenth Circuit found that allegations that a securities fraud defendant must have known of certain information because of his position in the company, without more, are not sufficient to support a strong inference of scienter under the PSLRA."  *In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d at 1197 (citing *Fleming*, 264 F.3d at 1263-64 (allegations that defendants held senior management positions, had access to inside information, and thus must have known of fraudulent statements are insufficient to plead scienter under PSLRA)).  "Allegations that rely on the core-operations inference are among the allegations that may be

considered in the complete PSLRA analysis." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "[A]n allegation that an individual defendant knew certain information based on that individual's position in a company, combined with other relevant allegations concerning knowledge or motive, can be sufficient to support a strong inference of scienter under the PSLRA." *In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d at 1197 (citations omitted). Core-operations refer to instances where the nature of the relevant facts allegedly known and not disclosed by defendants was "of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *South Ferry LP*, 542 F.3d at 786. In such instances, plaintiffs may sufficiently plead core-operations allegations without accompanying particularized allegations. *Prissert*, 894 F. Supp. 2d at 1373 (citation omitted).

The scienter of senior controlling officers of a corporation may be attributed to a corporation itself to establish liability as a primary violator of Section 10(b) and Rule 10b-5 when those senior officials were acting within the scope of their apparent authority. *Adams*, 340 F.3d at 1106-07 (citations omitted).

Plaintiffs allege that certain Molycorp senior executives, including— Smith, Allen, Ashburn, Burba—had knowledge regarding Mountain Pass operations (including daily ore analysis) and the existence (or lack thereof) of HREEs due to their positions with access to the LIMS system. (ECF No. 153 ¶¶ 25-29, 31.) Plaintiffs do not allege that the above-identified executives' compensation was tied to production of HREEs from Mountain Pass. (*See generally* ECF No. 153.) Given that Plaintiffs' FAC concerns Molycorp's products (ECF No. 153 ¶ 3) at its mine (ECF No. 153 ¶¶ 70, 81), the Court finds it would be absurd to suggest that Defendants Smith, Allen, Ashburn, and Burba were without knowledge that Mountain Pass did not contain any HREEs (if that is factually accurate).

Thus, Plaintiffs' allegations regarding certain senior executives' scienter—in consideration of the FAC in its entirety—to ascribe the 1934 Act non-Investor Defendants' scienter are sufficient.

c.      *Loss Causation*

In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005), the Supreme Court held that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." The Tenth Circuit has held that "[a]lleging that [a stock] price has been inflated as a result of a misrepresentation is not enough—even if the plaintiff has suffered a loss—unless the plaintiff can identify a 'causal connection' between the loss and the misrepresentation." *In re Williams Sec. Litig.*, 558 F.3d at 1136-37 (citing *Dura Pharm.*, 544 U.S. at 347).

"Even if the truth has made its way into the marketplace, *Dura* requires that a plaintiff show that it was this revelation that caused the loss and not one of the 'tangle of factors' that affect price." *In re Williams Sec. Litig.*, 558 F.3d at 1137 (citing *Dura Pharm.*, 544 U.S. at 343). "When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura Pharm.*, 544 U.S. at 342-43. "The securities laws are not meant to 'provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause.'" *In re Williams Sec. Litig.*, 558 F.3d at 1137 (quoting *Dura Pharm.*, 544 U.S. at 345). "The plaintiff bears the burden of showing that his losses were attributable to the revelation of the fraud and not the myriad other factors that affect a company's stock price. Without showing a causal connection that specifically links losses to

30

misrepresentations, he cannot succeed." *In re Williams Sec. Litig.*, 558 F.3d at 1137. "[T]o establish loss causation, a plaintiff must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, *i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Prissert*, 894 F. Supp. 2d at 1375 (quoting *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 173 (2d Cir. 2005)). "[T]o sufficiently plead loss causation, a plaintiff must allege a disclosure or revelation of truth about a defendant's prior misstatement or omission that is in some way connected with a drop in stock price." *Prissert*, 894 F. Supp. 2d at 1375 (citing *Dura Pharm.*, 544 U.S. at 346-47)).

"Any reliable theory of loss causation that uses corrective disclosures will have to show both that corrective information was revealed and that this revelation caused the resulting decline in price. To be corrective, the disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company." *In re Williams Sec. Litig.*, 558 F.3d at 1140.

Plaintiffs allege that "[a]s a direct result of disclosures between November 8 and November 10, 2011, [Molycorp's] securities prices suffered an abnormal decline in value. By November 10, 2011, after information had entered the market that HREEs did not exist at Mountain Pass, [Molycorp's] stock price dropped $6.18 per share, or 22.0% on high trading volume." (ECF No. 153 ¶ 117.) Specifically, Plaintiffs allege that during a Motor & Motion Association Technical Conference between November 8 and 10, 2011, "a Molycorp senior executive informed participants at the conference that the Company had not found any quantities of HREEs in the Mountain Pass ore body." (ECF No. 153 ¶ 110.) Further, Plaintiffs allege that during a conference call, Defendant Smith stated "that the furthest the Company had come along

in actually identifying HREEs at Mountain Pass was only that the Company was building a 'cracking facility'….' (ECF No. 153 ¶ 111.)

Plaintiffs adequately pled a misrepresentation with respect to the presence of HREEs and whether Molycorp's principal products were dysprosium and terbium (*see supra* Section III.A.1.a). Plaintiffs allege the revelation that Molycorp "had not found" any HREEs (and that those HREEs "did not exist") in the Mountain Pass ore body caused a drop in stock price. (ECF No. 153 ¶¶ 110-112, 117.) If factually accurate, this is a corrective statement. *See Lentell*, 396 F.3d at 175 (holding that "[t]o plead loss causation, the complaint[] must allege facts that support an inference that [the defendant's] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud"). Thus, Plaintiffs have adequately pled loss causation.

Defendants argue that the public did not have access to the disclosed information during the Motor & Motion Association Technical Conference. (ECF No. 160 at 16.) Defendants improperly raise a factual concern. The Court construes the FAC to allege that "participants" (ECF No. 153 ¶ 110) in the conference were individuals without association to Molycorp and thus, constitute the public.

Also, Defendants argue that none of Smith's statements during a November 10, 2011 conference call (ECF No. 153 ¶ 111) discussing Molycorp's quarterly results "were tied in any manner to the presence or absence of heavy REEs at Mountain Pass." (ECF No. 160 at 16-17.) The Court finds this argument intriguing but not sufficient at this matter's procedural stage. The Court notes that Plaintiffs allege that the construction of a "cracking facility" was "far from completion, uneconomical, and inefficient." (ECF No. 153 ¶ 111.) Plaintiffs' "cracking facility" allegations may undermine its claim that it was the revelation regarding the lack of HREEs in

Mountain Pass ore which caused the drop in stock price.  Rather, it could have been the

investors' reactions to the "cracking facility" announcement which led to the price drop.  The

Court does not definitively resolve this factual concern at this matter's procedural posture.

> d.    *Insider Trading Claims Against Investor Defendants*

There are two elements for establishing a Rule 10b-5 violation against individuals other

than corporate insiders:  "(i) the existence of a relationship affording access to inside information

intended to be available only for a corporate purpose, and (ii) the unfairness of allowing a

corporate insider to take advantage of that information by trading without disclosure."  *Dirks v.

S.E.C.*, 463 U.S. 646, 653-54 (1983) (citation omitted); *see Garcia v. Cordova*, 930 F.2d 826,

829 (10th Cir. 1991).  Investor Defendants argue that the FAC contains "no factual allegations in

support of an insider trading violation."  (ECF No. 163 at 3.)  The Court finds that Plaintiffs

allege in a conclusory fashion that Investor Defendants had "access to inside information

intended to be available only for a corporate purpose."  Specifically, Plaintiffs allege that

Investor Defendants had knowledge that "the Mountain Pass ore body did not (and never would)

contain virtually any HREEs."  (ECF No. 153 ¶ 75.)    And Plaintiffs allege Kristoff/Cogut,

Bhappu/Dolan, Cogut/Kristoff provided T-II Holdings, RCF, and Pegasus (respectively) with

this "material, adverse, non-public information." (ECF No. 153 ¶¶ 37, 35, 33.)  Plaintiffs,

however, do not allege, in a non-conclusory fashion, how Kristoff, Bhappu, Dolan, and Cogut

had this knowledge.  (*See generally* ECF No. 153.)  There is no allegation that Kristoff, Bhappu,

Dolan, and Cogut had access to any information concerning the absence of HREEs at Mountain

Pass and more specifically, the LIMS system.  (*See generally* ECF No. 153.)  Therefore, the

allegation that Investor Defendants had access to information—which was only provided by

Kristoff, Bhappu, Dolan, and Cogut— concerning the absence of HREEs at Mountain Pass is not

well pled.  *See In re Am. Express Co. Sec. Litig.*, 02 Civ. 5533(WHP), 2008 WL 4501928, *7

(S.D.N.Y. Sept. 26, 2008).

Thus, Plaintiffs' insider-trading claim against Investor Defendants is insufficiently pled.

2.        Control Person Liability Claim[18]

Section 20(a) of the 1934 Act states

Every person who, directly or indirectly, controls any person liable under any
provision of this chapter or of any rule or regulation thereunder shall also be liable
jointly and severally with and to the same extent as such controlled person to any
person to whom such controlled person is liable . . ., unless the controlling person
acted in good faith and did not directly or indirectly induce the act or acts
constituting the violation or cause of action.

15 U.S.C.A. § 78t(a) (West 2014).

To state a *prima facie* case of control person liability under Section 20(a) of the 1934

Act, "the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control'

over the primary violator by the alleged controlling person."  *Adams*, 340 F.3d at 1107 (citing

*Fleming*, 264 F.3d at 1270-71).  To make a showing that individual defendants were control

persons, "the plaintiffs must point to facts which indicate that the defendants had 'possession,

direct or indirect, of the power to direct or cause the direction of the management and policies of

a person, whether through ownership of voting securities, by contract, or otherwise.'"  *Adams*,

340 F.3d at 1108 (quoting *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir.

1998)).

Because the Court has found that Plaintiffs adequately pled a Section 10(b) claim against

Defendants Smith, Allen, Ashburn, Bhappu, Burba, Dolan, Kristoff, Henry and Thompson (*see*

*supra* Section III.A.1), the Court finds that Plaintiffs have adequately pled a violation under

Section 20(a) of the 1934 Act against these Defendants.  Because the Court has found that

---

[18] Plaintiffs' Section 20(a) claim is against Defendants Smith, Allen, Ashburn, Bhappu, Burba, Cogut, Dolan,
Kristoff, Henry, and Thompson.  (ECF No. 153 ¶¶ 143-46.)

Plaintiffs have not adequately pled a Section 10(b) claim against Defendant Cogut (*see supra* Section III.A.1.d), the Court finds that Plaintiffs have not adequately pled a violation under Section 20(a) of the 1934 Act against Cogut.

> **B.     1933 Act Claims**

Plaintiffs "incorporate by reference each non-fraud based allegation regarding false and misleading statements set forth at ¶¶ 93, 95-96, 104, 109 [in the FAC]."  (ECF No. 153 ¶ 147.) Plaintiffs allege that the 1933 Act Defendants' negligent rather than fraudulent conduct violated the 1933 Act.  (ECF No. 153 ¶¶ 147-50.)  Plaintiffs allege that in connection with the February and June Offering documents, 1933 Act Defendants materially misrepresented:  (1) dysprosium and terbium being Molycorp's "principal products"; and (2) the existence of HREEs, including dysprosium and terbium, at Mountain Pass.  (ECF No. 153 ¶ 149.)  Plaintiffs allege that these statements were false because:

(a)     daily analysis of 20 to 30 samples of Mountain Pass ore body, between 2008 and throughout 2011, showed no dysprosium or terbium in Mountain Pass ore and this information was kept in a LIMS system to which certain Molycorp executives had access and was part of their job responsibilities (ECF No. 153 ¶¶ 25-28, 31, 79, 155(a));

(b)     investigations of float tests of Mountain Pass ore body failed to identify any significant quantities of HREEs at Mountain Pass (ECF No. 153 ¶¶ 77, 155(a));

(c)     between 2008 and throughout 2011, Mountain Pass never produced any HREEs (ECF No. 153 ¶¶ 80, 155(b)).

1.    Section 11 Claim[19]

Section 11(a) of the 1933 Act provides "that when a securities registration statement contains material misstatements or omissions, persons who purchased securities sold in an offering covered by the registration statement may recover losses caused by the defect from the issuer, any person who signed the registration statement, directors of the issuer, and others." *In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d at 1202 (citing *Joseph v. Wiles*, 223 F.3d 1155, 1159 (10th Cir. 2000)).   "No scienter is required for liability under § 11." *In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d at 1202.   "A defendant may be liable under § 11 for negligent material misstatements or omissions." *In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d at 1202 (citing *Ernst & Ernst*, 425 U.S. at 208).   Under certain circumstances, the heightened-pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure may apply to a Section 11 claim.  *See Schwartz*, 124 F.3d at 1251-52.   When a plaintiff's 1933 Act claim is based on negligent rather than fraudulent conduct, however, a court applies the more lenient pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure.  *See Schwartz*, 124 F.3d at 1251-52.

A claim under Section 11 must be based on a registration statement filed with the SEC. *In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1191 (D.N.M. 2010) ("*Thornburg I*") (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 (1983)).   "A Section 11 plaintiff must identify a material misrepresentation within the four corners of the challenged registration statement, or an omission of a material fact required to be stated therein, or necessary to make the statements therein not misleading." *Id*. (citations omitted).

---

[19] Plaintiffs' Section 11 claim is against Defendants Smith, Allen, Ball, Bhappu, Dolan, Kristoff, Machiels, Henry, Thompson and the Underwriter Defendants.  (ECF No. 153 ¶¶ 159-68.)

a.       *Whether the FAC Sounds in Fraud or Negligence*[20]

Plaintiffs allege that the 1933 Act Defendants violated the 1933 Act through negligent—

rather than fraudulent— conduct.  (ECF No. 153 ¶¶ 147-50, 158.)  Defendants argue that

Plaintiffs' nominal attempt to disclaim the fraudulent allegations fails.  (ECF No. 160 at 18-19.)

In support of Plaintiffs' Section 11 claim, Plaintiffs rely upon the same 1934 Act alleged false

and misleading statements with respect to the February and June Offering documents.  (ECF No.

153 ¶ 158 (referring to allegations at ECF No. 153 ¶¶ 77-78, 80, 93, 95-96, 104, 109).)

Defendants argue that Plaintiffs allege a unified course of fraudulent conduct to form the basis of

their claims, *i.e.*, the cover up of the presence of HREEs in Mountain Pass.  (ECF No. 160 at 18-

19.)  Plaintiffs argue that the FAC does not allege a unified course of fraudulent conduct.  (ECF

No. 164 at 8.)  Therefore, Plaintiffs argue they need only satisfy the pleading standards under

Rule 8(a).  (ECF No. 164 at 6-8.)

The Court finds Defendants have the better argument and Rule 9(b) applies.  *Cf. In re*

*Oppenheimer Rochester Funds Group Sec. Litig.*, 838 F. Supp. 2d 1148, 1157 n.6 (D. Colo.

2012) (observing that the plausibility pleading requirement applicable to Section 11 and Section

12(a)(2) claims tends to merge with the particularity standard of Rule 9(b)).  Plaintiffs allege that

Defendants engaged in an unlawful scheme by "misleadingly inform[ing] investors that

dysprosium and terbium were [its] 'principal products' and were present in the ore deposit at

Mountain Pass." (ECF No. 153 ¶¶ 72, 115.)  The FAC, contrary to Plaintiffs' argument (ECF

No. 164 at 8 n.6), alleges the February and June Offerings enabled the 1933 Act Defendants to

perpetuate the illusion that Mountain Pass contained HREEs and Molycorp's principal products

were dysprosium and terbium.  (ECF No. 153 ¶¶ 92-109.)  Therefore, the Court finds the facts

pled in this case similar to the facts pled in *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 885

---

[20] With respect to the prior complaint, the Court did not reach this issue.  (ECF No. 150 at 61.)

(9th Cir. 2012) and *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir.

2006).  The Court finds Plaintiffs' reliance (ECF No. 164 at 6) upon *Schwartz*, 124 F.3d at 1251,

*Genesee Cnty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, 825 F. Supp. 2d

1082, 1123-24 (D.N.M. 2011), and *Thornburg I*, 695 F. Supp. 2d at 1190, misplaced.

Specifically, Plaintiffs allege that similar to the 1934 Act Defendants, "the 1933 Act Defendants

*disregarded* years of ore testing maintained in [Molycorp's] LIMS system establishing that

dysprosium and terbium did not exist at Mountain Pass."  (ECF No. 153 ¶ 150 (emphasis

added).)  That is Plaintiffs relied on the same alleged misrepresentations that are central to

Plaintiffs' Section 10(b) fraud claim.

          b.     *Alleged Material Misrepresentations or Omissions*

For the reasons stated below, Plaintiffs adequately state a Section 11 claim because the

complained of statements were materially false or misleading.

          (1)     February 2011 Offering Documents

Plaintiffs allege that "[i]n connection with the February 2011 Offering, Molycorp filed

with the SEC the February 2011 Registration Statements."  (ECF No. 153 ¶ 151.)  The February

2011 Registration Statements consisted of Molycorp's Form S-1/A filed with the SEC on

February 7, 2011 and Form S-1MEF filed with the SEC on February 11, 2011.  (ECF No. 153 ¶

25.)  Further, in connection with the February Offering, Molycorp also filed with the SEC, on

February 14, 2011, a prospectus on Form 424B4.  (ECF No. 153 ¶ 41.)  Together, the February

prospectus and the February 2011 Registration Statements are referred to as the February

Offering Documents.  Plaintiffs allege that February Offering Documents contained the

following materially false and misleading statements:  (i) "heavy REEs are contained in . . . our

deposit at Mountain Pass"; and (ii) "[o]ur principal products[] includ[e] . . . dysprosium[] and terbium."  (ECF No. 153 ¶ 155.)

Plaintiffs allege that the 1933 Act Defendants "*disregarded*, and otherwise failed to disclose to investors years of ore testing conducted between 2008 and throughout 2011 maintained in [Molycorp's] LIMS system establishing that dysprosium and terbium did not exist."  (ECF No. 153 ¶ 156 (emphasis added).)  Plaintiffs rely upon the analytical chemist for its assertion that the complained of statements were false.  (ECF No. 153 ¶ 155(a).)  As stated previously, the Court finds the allegations predicated upon the analytical chemist well pled.

Therefore, the Court finds that the complained of February 2011 statements (ECF No. 153 ¶¶ 147-152, 155-168) well pled as materially false or misleading.  Thus, Plaintiffs adequately pled a Section 11 claim against the 1933 Act Defendants related to the February Offering.

### (2)    June 2011 Offering Documents

Plaintiffs allege that "[i]n connection with the June 2011 Offering, Molycorp filed with the SEC the June 2011 Registration Statement."  (ECF No. 153 ¶ 153.)  The June 2011 Registration Statement consisted of Molycorp's Form S-1/A which was filed with the SEC. (ECF No. 153 ¶ 25.)  Further, in connection with the June Offering, Molycorp also filed with the SEC, on June 10, 2011, a prospectus on Form 424B4.  (ECF No. 153 ¶ 41.)  Together, the June prospectus and the June 2011 Registration Statements are referred to as the June Offering Documents.  Plaintiffs allege that the June Offering Documents contained the following materially false and misleading statements:  (i) "heavy REEs are contained in . . . our deposit at Mountain Pass"; and (ii) "[o]ur principal products[] includ[e] . . . dysprosium[] and terbium." (ECF No. 153 ¶ 155.)

Plaintiffs allege that the 1933 Act Defendants "*disregarded*, and otherwise failed to disclose to investors years of ore testing conducted between 2008 and throughout 2011 maintained in [Molycorp's] LIMS system establishing that dysprosium and terbium did not exist." (ECF No. 153 ¶ 156 (emphasis added).)  Plaintiffs rely upon the analytical chemist for its assertion that the complained of statements were false.  (ECF No. 153 ¶ 155(a).)  As stated previously, the Court finds the allegations predicated upon the analytical chemist well pled.

Therefore, the Court finds that the complained of June 2011 statements (ECF No. 153 ¶¶ 147-150, 153-168) well pled as materially false or misleading.  Thus, Plaintiffs adequately pled a Section 11 claim against the 1933 Act Defendants related to the June Offering.

2.    Section 12 Claim[21]

Section 12(a)(2) provides that "any person who offers or sells a security . . ., by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . shall be liable, subject to subsection (b) of this section, to the person purchasing such security from him. . . ."  15 U.S.C.A. § 77l(a)(2) (West 2014).

a.    *Standing*

Section 12(a)(2) contains "*an express privity requirement*, giving a cause of action only to individuals who purchase securities *directly* from a person who sells the securities by means of a prospectus."  *Joseph*, 223 F.3d at 1161 (emphasis added).  Plaintiffs allege that they "purchased . . . shares Molycorp common and preferred stock in the February and June 2011 Offerings pursuant to the February and June 2011 [p]rospectuses."  (ECF No. 153 ¶ 171.)

---

[21] Plaintiffs' Section 12(a)(2) claim is against Defendants Morgan Stanley, J.P. Morgan, Knight, Dahlman, Stifel, BNP, CIBC, Piper Jaffray, and RBS.  (ECF No. 153 ¶¶ 169-75.)

Plaintiffs allege that the "Underwriter Defendants were sellers, offerors, and/or solicitors of sales of the common and preferred stock offered in connection with the February and June 2011 Offerings pursuant to the February and June 2011 [p]rospectuses." (ECF No. 153 ¶ 170.)

While Plaintiffs may not be able to ultimately prove a Section 12(a)(2) claim against each Section 12(a)(2) Defendant with respect to the February and/or June Offerings, Plaintiffs have sufficiently pled a Section 12(a)(2) claim for purposes of establishing standing under Rule 8. *See Genesee Cty. Employees' Ret. Sys.*, 825 F. Supp. 2d at 1211.

b. *Material Misstatement or Omission*

As discussed previously (*see supra* Section III.B.1), Plaintiffs have pled a false or misleading statement in the February or June Offering documents. Thus, the Court concludes that Plaintiffs have sufficiently pled a Section 12(a)(2) claim. *See In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1192 (D.N.M. 2012) (holding that Section 12(a)(2) of the 1933 Act requires a showing that a defendant made a materially false or misleading statement or omission to trigger liability) (hereinafter "*Thornburg III*").

3. <u>Control Person Liability Claims</u>[22]

Section 15(a) of the 1933 Act states

> Every person who . . . controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C.A. § 77o (West 2014).

---

[22] Plaintiffs' Section 15 claim is against Defendants Smith, Allen, Ashburn, Ball, Bhappu, Burba, Dolan, Kristoff, Machiels, Henry, and Thompson. (ECF No. 153 ¶¶ 176-79.) The Court notes that although Ball is named in the caption of the "Third Claim for Relief" (ECF No. 153 at 70), he is not named in the FAC paragraphs under this claim (*see generally* ECF No. 153 ¶ 176). Therefore, there is no Section 15(a) claim against Ball.

41

To state a prima facie case of control person liability under Section 15 of the 1933 Act, "the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *Adams*, 340 F.3d at 1107 (citing *Fleming*, 264 F.3d at 1270-71). To make a showing that individual defendants were control persons, "the plaintiffs must point to facts which indicate that the defendants had 'possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise.'" *Adams*, 340 F.3d at 1108 (quoting *Maher*, 144 F.3d at 1305).

Here, Plaintiffs have pled a primary violation of the 1933 Act, (*see supra* Sections III.B.1 and III.B.2). Further, Plaintiffs adequately pled Defendants Smith, Allen, Ashburn, Bhappu, Burba, Dolan, Kristoff, Machiels, Henry, and Thompson had the power to direct or cause the direction of management and policies. (ECF No. 153 ¶¶ 177, 25-28, 30-31, 34, 36, 38-39, 50.) Therefore, Plaintiffs sufficiently pled a Section 15 claim against these Defendants.

IV.     **CONCLUSION**

Based on the foregoing, the Court:

(1)     GRANTS Investor Defendants' motion to dismiss (ECF No. 163);

(2)     GRANTS, in part, and DENIES, in part, Defendants' motion to dismiss (ECF No. 160), to wit, the Court:

(i)     DISMISSES Plaintiffs' Section 10(b) and Rule 10b-5 claims (ECF No. 153 ¶¶ 132-42) against Defendants Cogut, RCF, T-II Holdings, and Pegasus;

(ii)     DISMISSES Plaintiffs' Section 20(a) claim (ECF No. 153 ¶¶ 143-46) against Defendant Cogut; and

(iii)     DOES NOT DISMISS Plaintiffs' claims (ECF No. 153 ¶¶ 143-46; 159-179) against Defendants Ball, Bhappu, Dolan, Kristoff, Machiels, Henry, Thompson, Smith, Allen, Ashburn, Burba, J.P. Morgan, Morgan Stanley, Knight, Dahlman, Stifel, BNP, CIBC, Piper Jaffray, and RBS.

DATED this 20th day of January, 2016.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge